1722

Paul HYER, Individually and d/b/a Hyer Drug Store, Respondent v. J. Browning McREE, M.D., Wayne R. Yost, M.D., and Family Practice Associates, Appellants.

(410 S.E. (2d) 605)

Court of Appeals

*Ziva P. Bruckner*, North Augusta, *for appellants.*

*Richard L. Pearce*, Aiken, *for respondent.*

Heard Oct. 8, 1991; Decided Nov. 12, 1991.

Rehearing Denied Dec. 9, 1991.

GOOLSBY, Judge:

Paul Hyer, who operates Hyer Drug Store in the Lynnhurst Shopping Center in North Augusta, brought this action to enjoin other tenants of the shopping center, J. Browning McRee, M.D., Wayne R. Yost, M.D., and Family Practice Associates (hereafter the "physicians"), from selling prescription drugs. The special referee granted the injunction and taxed costs to the physicians. The physicians appeal. We reverse.

The physicians' appeal raises the issue of whether the sale by them of prescription drugs to their patients constitutes the operation of a "drug store and pharmacy" within the meaning of a restrictive covenant applicable to the shopping center that states, "There shall be allowed to operate on said property only one business engaged in the operation of a drug store and pharmacy."

In January 1989, the physicians began selling prescription drugs at cost, plus a three-dollar recordkeeping charge, to some of their patients. The physicians bought the drugs from the Allscrips Company in premeasured quantities. Before they delivered the drugs to their patients, they put the drugs into bottles, sometimes added water to the drugs to activate them, and labeled the bottles.

The physicians did not fill prescriptions written by other doctors, did not refill any prescriptions, did not make the availability of the drugs known to all their patients, and did not employ a pharmacist. They only sold the drugs to a patient when they deemed it medically necessary for a patient to begin taking the prescribed drug immediately and circumstances made it impractical for the patient to obtain the drug from a pharmacy. The physicians derived no profit from selling the drugs.

The physicians wrote prescriptions for approximately 300 brands of drugs, but sold only about 40 brands themselves. They kept their entire stock of Allscrips drugs in a storageroom cabinet and sold the drugs to less than two per cent of their patients.

Hyer's store carried between 3,500 and 5,000 brands of drugs and filled, on average, between 60 and 70 prescriptions a day. His store also sold other items, such as health and beauty aids, gifts, and sundries. By Hyer's own estimate, he

incurred damages of only around $51 from the physicians' sale of drugs.

The special referee, apparently treating the terms "drug store" and "pharmacy" as synonymous, defined the term "drug store," as used in the restrictive covenant in issue, as "a place where substances used as medicines are offered for sale." He determined the physicians violated the restrictive covenant because they "operat[ed] 'a drug store and pharmacy' " by "selling prescription medicines to their patients."

In defining the term "drug store" as he did, the special referee fashioned too large a shield with which to protect Hyer's business. The special referee's definition would cover any business, whether a gas station, convenience store, or supermarket, that offered for sale any type of medicine, including cough drops, antacids, and headache powers.

Covenants that restrict the free use of property must be strictly construed against limitations upon the property's free use. *Edwards v. Surratt*, 228 S.C. 512, 90 S.E. (2d) 906 (1956). Where there is doubt, the doubt must be resolved in favor of the property's free use. *Henry v. Chambron*, — S.C. —, 404 S.E. (2d) 518 (Ct. App. 1991). When applied to the facts presented here, the rule of strict construction does not permit the covenant at hand to be so construed as to characterize the physicians' business as a "drug store and pharmacy," even though the physicians sold prescription drugs.

The sale, at cost and under exigent circumstances, by the physicians to their patients of prepackaged drugs constituted but a very small part of the physicians' medical practice. Moreover, the physicians, as we mentioned, neither employed a pharmacist nor filled prescriptions written by other doctors and there is no evidence they kept pharmacy equipment. *See Parr v. Spires*, 41 So. (2d) 336 (Fla. 1949) (a drug room operated by a physician was not a drug store and not subject to pharmacy regulations where the physician sold to his patients, upon request, prescription drugs compounded by pharmaceutical houses under trade names and where the physician did not fill prescriptions written by other physicians); *Love v. Escambia County*, 157 So. (2d) 205 (Fla. App. 1963) (a clinic was not a "retail drug establishment" and not subject to pharmacy regulations where the clinic dispensed drugs free of charge from prepackaged containers filled from the original manufac-

turers' containers and where the clinic only filled prescriptions written by the director of the clinic); *cf. Medico-Dental Bldg. Co. of Los Angeles v. Horton & Converse,* 21 Cal. (2d) 411, 132 P. (2d) 457 (1942) (evidence that a physician employed a pharmacist and maintained a separate room stocked with drugs, pharmacist's scales, mortars, graduates, the usual compounding equipment, and pharmacy licenses and permits sustained the finding that the physician operated a "drug store" in violation of a restrictive covenant).

Because we reverse the special referee's decision that the physicians were operating a "drug store and pharmacy," we also reverse the award of costs, including special referee's fees, to Hyer.

Reversed.

SANDERS, C.J., and GARDNER, J., concur.