2232

C. Weston HOUCK, Appellant v. A Carolyn RIVERS, Hamlin Beattie and 301 East Bay Street, HPR, of whom A. Carolyn Rivers is the Respondent.

(450 S.E. (2d) 106)

Court of Appeals

*P. Michael Duffy, J. Sidney Boone, Jr.,* and *Karen C. Jackson,* all of *McNair & Sanford,* Charleston, *for appellant.*

*Philip A. Middleton, O. Grady Query,* and *Mark V. Evans,* Charleston, *for respondent.*

Heard Sept. 7, 1994

Decided Oct. 3, 1994; Reh. Den. Nov. 16, 1994.

*Per Curiam:*

Appellant, C. Weston Houck commenced an action for injunctive and declaratory relief against respondents, A. Carolyn Rivers, Hamlin Beattie and 301 East Bay Street Horizontal Property Regime, asserting Rivers was operating a bed and breakfast-type inn in her home at 301 East Bay Street, contrary to and prohibited by the Master Deed and By-Laws of the Horizontal Property Regime. Houck also requested attorney fees. The case was referred to the master-in-equity to enter a final judgment with direct appeal to the Supreme Court. The master found Rivers's bed and breakfast operation was a use consistent with the language of the Master Deed and denied relief. Houck appeals. We affirm in part and reverse in part.

The property in issue is a large, three-story Charleston home (unit A). It faces East Bay Street and has a kitchen house (unit B) and carriage house (unit C) to its rear. Each unit has its own private walled garden. In order to subdivide the property, the owners designated it a condominium regime, although each unit is entirely separate. Rivers owns unit A and resides on her property. Houck owns unit C, but leases the property to a third party. Unit B is also leased.

The Master Deed provides, in pertinent part:

## ARTICLE VIII.

## EASEMENT, COVENANT, USES, AND RESTRICTIONS

*Section 21:* Each dwelling unit, together with its percentage interest in the common elements and limited common elements, shall, for all purposes, constitute a separate parcel of real property. Each dwelling unit shall be occupied and used by the respective owner *only as private residential dwellings* for the owner, his family, his servants, tenants, and social guests *and for no other purposes*. Each unit may be used for *office or studio purposes in connection with customary home occupations*. Subject to those conditions set forth in this Master Deed, including the By-Laws and regulations thereunder, dwelling units may be owned, conveyed, transferred, or leased in the same manner as any other real property. . . .

(Emphasis supplied.) The By-Laws provide, in pertinent part:

## ARTICLE VI.

## RESTRICTIONS AND REGULATIONS

(a) *Restrictions.* The use of the property shall be subject to the following restrictions:

(1) Dwelling units shall be used only as residences.

The rules applicable to the construction of contracts are applicable to the construction of covenants in deeds. 17 S.C. Juris. *Covenants* § 69 (1993). However, covenants that restrict the free use of property must be strictly construed against limitations upon the property's free use. *Hyer v. McRee,* 306 S.C. 210, 410 S.E. (2d) 604 (Ct. App. 1991). Where there is doubt, the doubt must be resolved in favor of the property's free use. *Id.* As voluntary contracts, restrictive covenants will be enforced unless they are indefinite or contravene public policy. 17 S.C. Juris. *Covenants* § 100 (1993) (citing *Sea Pines Co. v. Wells,* 294 S.C. 266, 270, 363 S.E. (2d) 891, 894 (1987)). We agree with the master and the parties that the above-cited provisions of the Master Deed and By-Laws are unambiguous.

It is undisputed that Rivers is using her unit as a bed and breakfast operation. She provides rooms and occasional breakfast meals to guests who stay overnight at a cost of $75.00 to $110.00 per night. It is clear from the record that Rivers's customers are not "social guests," or "tenants" in the usual sense these terms are employed.[1] Rivers argues that under the City of Charleston's Zoning Ordinance, her bed and breakfast operation is considered a "home occupation" and, thus, under Section 21 of the Master Deed she is permitted to operate a bed and breakfast operation as a "customary home occupation." We disagree. Under this interpretation of Section 21, Rivers could operate any business out of her home as long as it qualified as a home occupation under the City Zoning Ordinance. If that were her intent as a drafter of the covenants, the covenants could have easily permitted all "customary home occupations" instead of limiting use of the property "for office or studio purposes in connection with customary home occupations." Therefore, even if Rivers's use is a "customary home occupation," as she claims, the particular use of her home as a bed and breakfast operation is not permitted by the Master Deed because it is not being used for office or studio purposes.

We find Rivers's use of her property clearly violative of both the Master Deed and the By-Laws of the Horizontal Property Regime. Thus, the master erred in failing to grant to Houck a declaratory judgment declaring Rivers's use of her property violates the Master Deed and By-Laws of the Regime.

Having found Houck is entitled to declaratory relief, we now turn to whether the master erred in refusing to grant Houck an injunction restraining and enjoining Rivers from using her property to operate a bed and breakfast operation in the future. Houck appears to assume that

---

[1] A tenant, in the broadest sense, is one who holds or possesses lands or tenements by any kind of right or title, whether in fee, for life, for years, at will, or otherwise. *Black's Law Dictionary* 1635 (4th Ed. 1968); *see* 41 *Words & Phrases* "Tenant" (1965 & Supp. 1994) for other definitions; *see also Columbia Ry., Gas & Elec. Co. v. Jones*, 119 S.C. 480, 112 S.E. 267 (1921) (A tenant is one how occupies the lands or premises of another in subordination to the other's title, and with his consent, express or implied and connotes landlord-tenant relationship).

should the court find Rivers violated the covenants, he would automatically be entitled to a mandatory injunction directing Rivers to abate the violation. On the other hand, Rivers summarily argues, that because the award of damages would provide Houck an adequate remedy at law, he is not entitled to the intervention of equity by way of injunctive relief. Because this is an action in equity tried by a single judge, we may make our own findings of fact based on our view of the evidence. *Myrtle Beach Farms Co. v. Hirsch*, 304 S.C. 94, 401 S.E. (2d) 196 (Ct. App. 1991).

Although an injunction, like all equitable remedies, is granted as a matter of sound judicial discretion, and not as a matter of legal right, *Metts v. Wenberg*, 158 S.C. 411, 155 S.E. 734 (1930), the right of a plaintiff to an injunction to enforce restrictive covenants has long received special treatment. *See Sprouse v. Winston*, 212 S.C. 176, 46 S.E. (2d) 874 (1948) (While it is true that the awarding of an injunction is addressed to the conscience of the court, this rule is not applicable where it clearly appears that an injunction is necessary to prevent one from violating the equitable rights of another where he has notice, actual or constructive, of such rights); 43A C.J.S. *Injunctions* § 100 (1978) (Restrictions which are fixed, definite, and unambiguous should be enforced as written and should not be extended by judicial construction); *see also* 20 Am. Jur. (2d) *Covenants, Conditions, and Restrictions* § 312 *et seq.* (1965); 4 Pomeroy's Equity Jurisprudence *Injunctions* § 1342 (5th ed. 1941); 5 Powell on Real Property *Covenants Respecting the Use of Land* § 676 (1994 & Cum. Supp. 1994).

The master denied Houck relief based on his finding Houck suffered no monetary damages. We agree with the master that Houck's testimony relative to damages was speculative, but he clearly testified that he was concerned that in the long run his property value would be adversely affected, even though he could not predict the extent to which his property value would be affected. Other evidence reflected his property value would not be affected. On the other hand, Rivers testified she would lose the income she receives from her bed and breakfast operation should an injunction be issued. To the extent the master denied the injunction based upon Houck's failure to prove monetary damages, he was in

error. As a general rule, a restrictive covenant will be enforced irrespective of the amount of damage which will result from the breach, and even though there is no substantial monetary damage to the complainant by reason of the violation. 20 Am. Jur. (2d) *Covenants, Conditions, and Restrictions* § 314; 43A C.J.S. *Injunctions* § 100; 4 Pomeroy's Equity Jurisprudence *Injunctions* § 1342 (Restrictive covenants in deeds and agreements limiting the use of land in a specified manner, or prescribing a particular use will be specifically enforced in equity by means of an injunction as a matter of course upon a breach of the covenant. The amount of the damages, and even the fact that the plaintiff has sustained no pecuniary damages, are wholly immaterial); 5 Powell On Real Property *Covenants Respecting the Use of Land* § 676 (A covenant may be enforced irrespective of the amount of actual monetary damage which results from its breach. The mere breach alone is grounds for injunctive relief).

In fact, several South Carolina appellate decisions have enforced restrictive covenants despite the fact that no monetary damages were stated to have been incurred by the person seeking enforcement of the covenants and restrictions. *See Sea Pines Plantation Co. v. Wells, supra; Bellamy v. Lovette,* 276 S.C. 9, 274 S.E. (2d) 426 (1981); *Nance v. Waldrop,* 258 S.C. 69, 187 S.E. (2d) 226 (1972); *Town of Sullivans Island v. Byrum,* 306 S.C. 539, 413 S.E. (2d) 325 (Ct. App. 1992); *Palmetto Dunes Resort v. Brown,* 287 S.C. 1, 336 S.E. (2d) 15 (Ct. App. 1985). The difficulty of establishing damages is generally recognized as a basis for awarding an injunction. *See Metts v. Wenderg, supra;* 43A C.J.S. *Injunctions* § 100 (1978); J.F. Dobbyn, *Injunctions In A Nutshell* (1974). Moreover, we observe the Master Deed authorizes injunctive relief for breach of the restrictive covenants. Where a covenant in a deed stipulates the remedy upon breach, such stipulation may be controlling. 21 C.J.S. *Covenants* § 51 (1990).

Finally, Houck claims he is entitled to attorney fees pursuant to Section 39 of the Master Deed, the By-Laws, and the theory of equitable indemnification. Ordinarily, to be entitled to attorney fees, Houck must show they are authorized by contract or statute. *South Carolina Dept. of Social Services v. Tharp,* — S.C. —, 439 S.E.(2d) 854 (1994) (citing *Hegler v.*

*Gulf Ins. Co.*, 270 S.C. 548, S.E.(2d) 443 (1978)). Our review of the Master Deed and By-Laws does not reveal authorization for the awarding of attorney fees. Likewise, we find Houck's demand for attorney fees under the theory of equitable indemnification to manifestly without merit and dispose of the claim pursuant to Rule 220(b), SCACR; S.C. Code Ann, § 14-8-250 (1976) and *Voelker v. Hollcock*, 288 S.C. 622, 344 S.E.(2d) 177 (Ct.App.1986). Accordingly, we affirm the trial court's denial of attorney fees.

In view of our holding, we need not reach the remaining issues Houck raises on appeal. We affirm the trial court's denial of attorney fees and reverse the denial of attorney fees and reverse the denial of declaratory and injunctive relief. We hereby order Rivers restrained and enjoined from using her property for a bed and breakfast operation.

Affirmed in part and reversed in part.