THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON 
 AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Kristin W. Hook,       
Respondent,
 
 
 

v.

 
 
 
Stephen P. Bishop and Sarah A. Bishop and Southtrust Mortgage Company, 
 Defendants, Of Whom Stephen P. Bishop and Sarah A. Bishop are,       
Appellants.
 
 
 

Appeal From Lexington County
Clyde N. Davis, Jr., Master in Equity

Unpublished Opinion No. 2004-UP-149
Submitted November 3, 2003  Filed March 
 2, 2004

AFFIRMED

 
 
 
James Randall Davis and Patrick J. Frawley, both of Lexington, for Appellants.
Jean Perrin Derrick, of Lexington, for Respondent.
 
 
 

PER CURIAM:  Kristin W. Hook brought this 
 action against Stephen P. Bishop and Sarah A. Bishop (the Bishops) seeking 
 enforcement of a restrictive covenant.  The master-in-equity issued a mandatory 
 injunction requiring the Bishops to remove all structures within the twenty-foot 
 side setback adjacent to Hooks property.  The Bishops appeal, claiming: 1) 
 Hook failed to prove she had the right to enforce the restrictive covenants; 
 2) the assignment to Hook of the right to enforce the restrictive covenants 
 was not valid; 3) the restrictive covenants are ambiguous and unenforceable; 
 4) the suit to enjoin construction was not timely commenced; 5) the court failed 
 to properly balance the equities between the parties; and 6) the award of attorneys 
 fees and costs was improper.  We affirm.  
FACTUAL/PROCEDURAL BACKGROUND
Spence Plantation is a residential subdivision 
 developed by RPW Development and its president, Robert P. Wilkins, Jr., (collectively, 
 Developer).  Each lot within the subdivision is subject to detailed and extensive 
 covenants as set forth in every deed.  The covenants require approval by Developer 
 and the Architectural Review Committee (ARC) of all building and landscaping 
 plans prior to construction.  To insure compliance, the covenants reserve to 
 Grantor or Grantors nominee authority to enforce the restrictive covenants. 
 [1]   Wilkins is named in each deed as Grantors nominee.  
In anticipation of building their home, the Bishops 
 submitted building and landscaping plans to Developer and ARC.  Although the 
 plans were approved, the Bishops began to erect a retaining wall that was not 
 included on the submitted plans. [2] 
   When Hook, the adjoining landowner, discovered the retaining wall, she 
 immediately contacted the Bishops to protest the construction.  However, the 
 Bishops continued to build the wall and also began construction of a swimming 
 pool without submitting plans to Developer or ARC for approval. [3]   
As a result, Hook initiated this action seeking 
 an injunction to stop further construction within the twenty-foot side setback 
 line adjacent to her property and requesting removal of all structures within 
 this area.  A temporary restraining order halted construction on the wall and 
 pool on April 20, 2001.  
At trial, the master-in-equity issued a mandatory 
 injunction, ordering the Bishops to remove all structures within the twenty-foot 
 side setback line of Hooks property, restore the land to its natural condition, 
 and conduct all further construction in accordance with plans approved by Developer 
 and ARC.  The master further awarded Hook $10,071.14 in attorneys fees and 
 costs.  
On appeal, the Bishops argue Hook did not have 
 the right to enforce the covenants because the document purporting to assign 
 this right to Hook was never introduced or admitted into evidence.  Furthermore, 
 they claim this right can not be assigned to Hook because the covenants designate 
 the succession of individuals that may act as Grantors nominee.  The Bishops 
 also contend: 1) the restrictive covenants are ambiguous, and thus, unenforceable; 
 2) suit was not timely commenced because the wall was completed before an action 
 to enjoin them was initiated; 3) in balancing the equities between the parties, 
 the harm caused by having to move the retaining wall outweighs any damage suffered 
 by Hook as a result of the wall; and 4) the award of attorneys fees and costs 
 was improper.
LAW/ANALYSIS
I.       Assignment of the Right to Enforce the Restrictive Covenants
Restrictive covenants are imposed as 
 a voluntary contract between parties. Houck v. Rivers, 316 S.C. 414, 416, 450 S.E.2d 106, 108, (Ct. 
 App. 1994); see also Seabrook Island Prop. Owners Assn v. Pelzer, 
 292 S.C. 343, 347, 356 S.E.2d 411, 414 (Ct. App. 1987) (Restrictive covenants 
 are contractual in nature and bind the parties thereto in the same manner as 
 any other contract.).  The rules applicable to the construction of contracts 
 are applicable to the construction of restrictive covenants contained in deeds.  
 Houck, 316 S.C. at 416, 450 S.E.2d at 108.  
An action to interpret a contract is 
 an action at law.  Pruitt v. South Carolina Med. Malpractice Liab. Joint 
 Underwriting Assn, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001) (An action 
 to construe a contract is an action at law reviewable under an any evidence 
 standard.).  In an action at law, on appeal of a case tried without a jury, 
 our scope of review extends merely to the correction of errors of law; factual 
 findings of the trial judge will not be disturbed on appeal unless a review 
 of the record discloses that there is no evidence which reasonably supports 
 the judges findings.  Crary v. Djebelli, 329 S.C. 385, 388, 496 S.E.2d 
 21, 23 (1998).         
A.      Proof of Assignment
The Bishops argue the master erred by 
 finding Hook was assigned the right to act as grantors nominee.  Specifically, 
 the Bishops argue the document purporting to assign the right to enforce the 
 covenants was never introduced or admitted into evidence.  Thus, they claim 
 Hook failed to prove the assignment.  We disagree.
Judicial notice is a substitute for formal 
 proof of a matter by evidence.  29 Am. Jur. 2d Evidence § 24 (2003).  
 Judicial notice is the means by which the court will admit into evidence and 
 consider, without proof, matters of common and general knowledge or those that 
 are easily capable of immediate verification.  Id.  The effect of judicial 
 notice of an adjudicative fact is to conclusively establish the fact.  Moss 
 v. Aetna Life Ins. Co., 267 S.C. 370, 377, 228 S.E.2d 108, 112 (1976). 
The restrictive covenants of Spence Plantation 
 allow Grantor or Grantors nominee to enjoin or take other legal steps to 
 prevent a violation of the restrictive covenants.  By document dated April 20, 
 2001, signed by Wilkins as Grantors nominee, Hook was assigned the right to 
 enforce the restrictive covenants pertaining to this litigation.  This document 
 was filed with Hooks initial pleadings, and Wilkins trial testimony confirmed 
 the intent to make this assignment. 
The record indicates the master took judicial 
 notice of the assignment document, without objection.  As judicial notice of 
 the document was not objected to at trial, this issue is not preserved for appellate 
 review.  See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 
 731, 733 (1998) (It is axiomatic that an issue cannot be raised for the first 
 time on appeal, but must have been raised to and ruled upon by the trial judge 
 to be preserved for appellate review.).  By taking judicial notice of the executed 
 assignment document, the existence and content of the document was established 
 as a fact.
B.      Validity of Assignment
The Bishops argue the master erred by 
 finding the assignment to Hook was valid because the covenants designate the 
 succession of individuals that may act as Grantors nominee, and whose authority 
 must be revoked prior to designating another individual to act as nominee.  
 We disagree.  
Words of a restrictive covenant will 
 be given the common, ordinary meaning attributed to them at the time of their 
 execution.  Taylor v. Lindsey, 332 S.C. 1, 4, 498 S.E.2d 862, 863 (1998).  
 However, [g]reater regard should be given to the intention of the parties, 
 as ascertained from the language used and the surrounding circumstances, than 
 to the exact words used in attempting to express that intention.  Richard R. 
 Powell, Powell on Real Property §60.05 at 60-75 (2000); see also 
 Palmetto Dunes Resort v. Brown, 287 S.C. 1, 6, 336 S.E.2d 15, 18 (Ct. 
 App. 1985) (holding because restrictive covenants are contractual in nature, 
 the paramount rule of construction, to ascertain and give effect to the intent 
 of the parties as determined from the whole document, is applied to restrictive 
 covenants).  
The restrictive covenants provide:

Grantor hereby names Robert P. Wilkins, Jr. as Grantors 
 nominee.  If for any reason he is unable or unwilling to serve, the following 
 are named as substitutes in the order named:  Robert P. Wilkins, Anne Wilkins 
 Brooks, Rose T. Wilkins, and Sarah W. Weiss.  Grantor further reserves the right 
 to revoke its designation and to name some other person or persons in writing. 

The covenants delineate the order of 
 substitutes to serve as Grantors nominee in the event Wilkins is unable 
 or unwilling to serve.  However, Wilkins has never been unable or unwilling 
 to serve as Grantors nominee, nor does a partial assignment of his right to 
 enforce the covenants make him unable or unwilling to serve.  See OShea 
 v. Lesser, 308 S.C. 10, 15, 416 S.E.2d 629, 632 (1992) (holding the right 
 to enforce a restrictive covenant is not fiduciary and may be assigned to another).  

As Wilkins has continuously acted as 
 Grantors nominee and has never been unable or unwilling to serve, the covenant 
 delineating the order of succession to serve as Grantors nominee is not applicable.  
 Thus, the evidence within the record supports the masters finding the assignment 
 to Hook was valid. [4] 
II.      Enforceability of the Restrictive Covenants
The Bishops argue the master erred by failing to 
 find the restrictive covenants ambiguous.  Specifically, they contend the Minimum 
 Architectural Standards read with the covenants create ambiguity between the 
 documents causing the covenants to be unenforceable.  We disagree.
The rules applicable to the construction 
 of contracts are applicable to the construction of restrictive covenants contained 
 in deeds.  Houck, 316 S.C. at 416, 450 S.E.2d at 108.  An action to 
 construe a contract is an action at law reviewable under an any evidence standard.  
 Pruitt, 343 S.C. at 339, 540 S.E.2d at 845.  Restrictions on the free 
 use of land are not favored in the law and any ambiguity within a covenant should 
 be construed strictly against the grantor and persons seeking to enforce it.  
 Hamilton v. CCM, Inc., 274 S.C. 152, 158, 263 S.E.2d 378, 381 (1980); 
 Taylor, 332 S.C. at 4, 498 S.E.2d at 864.  Conversely, this rule of strict 
 construction will not be used to defeat the clear and express language of a 
 restrictive covenant.  Sea Pines Plantation Co. v. Wells, 294 S.C. 266, 
 270, 363 S.E.2d 891, 894 (1987).
The Bishops contend the covenants are ambiguous 
 because they require a twenty-foot side setback for buildings, other structure[s] 
 or any improvement[s], while the Minimum Architectural Standards provide fences 
 may run along the property lines.  The Bishops argue because the terms building, 
 structure, improvement, fence, and wall are not defined or differentiated 
 from one another, the documents are ambiguous and thus unenforceable.  
The restrictive covenants provide, [n]o 
 building, or other structure or any improvement shall be located on said lot 
 within twenty (20') feet of the front line, within Twenty (20') feet of the 
 side lines, and within Fifty (50') feet of the rear line.  Providing additional 
 guidance, the Minimum Architectural Standards state, [f]ence[s] must start 
 at the back corners of the house and may run along the property lines.  Brick, 
 wrought iron, stucco and wooden fences (with approval) are allowed. . 
 . . [f]ence will be no higher than 5 feet.  (emphasis added).  
Although we do not see any ambiguity in these 
 two documents, the first restrictive covenant, as contained in every deed in 
 Spence Plantation, mandates:

NO BUILDING, FENCE, . . . OR ANY OTHER STRUCTURE OF ANY 
 KIND SHALL BE BEGUN, ERECTED OR PLACED ON THE LOT UNTIL THE BUILDING PLANS, 
 SPECIFICATIONS, DESIGN AND PLOT PLAN SHOWING THE LOCATION OF SUCH BUILDING, 
 FENCE, . . . OR STRUCTURE ON THE LOT IN QUESTION HAVE FIRST BEEN APPROVED BY 
 GRANTOR OR GRANTORS NOMINEE . . . .

(emphasis in original).
In submitting building and landscaping plans, the 
 Bishops did not depict any structure within the twenty-foot side setback area.  
 Subsequently, they constructed a retaining wall and a swimming pool within this 
 area.  Even if the retaining wall constituted a fence, the Bishops failed to 
 comply with the covenant requiring owners to obtain approval prior to construction.  
 Moreover, the covenants prohibit any fence to exceed five feet in height.  The 
 Bishops wall ranges in height from 6.7 feet to 11.7 feet, clearly outside of 
 the permissible limits.  
As the Bishops failed to obtain approval prior 
 to building, and the structure exceeds all permissible limits for construction 
 of a fence, ample evidence exists within the record to support the masters 
 finding that this structure violates the restrictive covenants.  Thus, the master 
 did not err by enforcing the covenants and ordering removal of the wall and 
 all structures within the twenty-foot side setback adjacent to Hooks property.
III.    Failure to Timely Commence Suit
The Bishops argue the master erred by finding suit 
 was timely commenced because they completed the wall before an action to enjoin 
 them was initiated.  Thus, they contend their wall should be deemed conforming.  
 We disagree.
A suit seeking an injunction to enforce restrictive 
 covenants is an action in equity.  Arnoti v. Lukie, 350 S.C. 177, 179, 
 564 S.E.2d 691, 692 (Ct. App. 2002).  Although equitable remedies are ordinarily 
 left to the sound discretion of the trial court, on appeal of an equitable action 
 tried by the master alone, an appellate court may find facts in accordance with 
 its own view of the preponderance of the evidence.  Id.; County of 
 Richland v. Simpkins, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct. App. 2002).
The restrictive covenant at issue provides:

In the event the Grantor, or his nominee shall fail to approve 
 or disapprove within thirty (30) days after plans and specifications have been 
 submitted to the Grantor, or in any event, if no suit to enjoin the construction 
 has been commenced prior to the completion thereof, approval will not be required 
 and the related covenants shall be deemed to have been fully complied with.   

It is undisputed Hook immediately objected upon 
 learning of the wall, and attempts were made between the parties and Developer 
 to reach an amicable solution.  However, during these negotiations and while 
 on notice of Hooks objections, the Bishops continued to build the wall.  Furthermore, 
 by Mr. Bishops own testimony, the wall was not yet complete at the time of 
 trial.  Bishop testified his plans include installing thirty-two-inch-high wrought-iron 
 brackets between the nine pillars capping the wall and topping the pillars with 
 one-foot tall brass lanterns.  
As the evidence in the record indicates the wall 
 was not yet complete at the time of trial, the master did not err by finding 
 suit was timely commenced.
IV.    Balancing of Equities
The Bishops argue the master erred by failing to 
 properly balance the equities between the parties.  We disagree.
A court does not automatically issue a mandatory 
 injunction once it finds a restrictive covenant has been violated.  The court 
 must balance the equities between the parties; and if the harm to the defendant 
 outweighs the plaintiffs benefit, no relief will be granted.  Sea Pines, 
 294 S.C. at 274, 363 S.E.2d at 896 (citing Hunnicutt v. Rickenbaker, 
 268 S.C. 511, 515-516, 234 S.E.2d 887, 889 (1977)).  Although the issuance of 
 a mandatory injunction requires a balancing of the equities between the parties, 
 the decision of whether to issue such relief rests in the courts sound discretion.  
 Sea Pines, 294 S.C. at 274, 363 S.E.2d at 896.
However, injunctions are routinely granted even 
 though the injunctive remedy may cause economic hardship to the defendant.  
 Sea Pines, 294 S.C. at 275, 363 S.E.2d at 896.  Furthermore, a restrictive 
 covenant will be enforced irrespective of the amount of damage which will result 
 from the breach, and even though there is no substantial monetary damage to 
 the complainant by reason of the violation.  The amount of damages and even 
 the fact that the Plaintiff has sustained no pecuniary damages are totally immaterial.  
 Houck, 316 S.C. at 419, 450 S.E.2d at 109.  A court of equity will issue 
 an injunction when it is necessary to prevent an individual from violating the 
 equitable rights of another where he has notice, actual or constructive, of 
 such rights.  Sprouse v. Winston, 212 S.C. 176, 185, 46 S.E.2d 874, 878 
 (1948).  
The evidence presented at trial shows the removal 
 cost of the retaining wall would be $20,000.00, while the cost to rebuild the 
 wall outside of the twenty-foot side setback area would be between $60,000.00 
 and $80,000.00.  The Bishops also assert the removal of the wall would diminish 
 their ability to use the existing garage.  However, the master found this expense 
 is incurred solely by the Bishops actions in willfully proceeding to build 
 the wall while on notice of Hooks objections.  
In contrast to the harm caused by having to move 
 the retaining wall, the Bishops argue Hook has suffered no damage as a result 
 of the wall.  However, the master found Hooks property had substantially 
 diminished in value due to the breach of the covenants by the Bishops.  Without 
 issuance of an injunction, this harm would be irreparable.  Thus, the only remedy 
 available to restore Hook to the position she was in prior to the violation 
 is an injunction.    
Furthermore, upon review of the record, it appears 
 the master, in balancing the equities, weighed heavily that Bishop proceeded 
 to build while on notice of Hooks objections.  The record clearly supports 
 the masters finding that equity favors Hook, and thus, the master did not abuse 
 his discretion by issuing the mandatory injunction.  See Arnoti, 
 350 S.C. at 183, 564 S.E.2d at 694 ([W]hile removal . . . will result in a 
 hardship to the [plaintiffs], it was caused by [their] own actions in knowingly 
 failing to either comply with the restrictions of the subdivision or seek, through 
 proper means, an amendment of the restrictions. ).
 V.              
Attorneys Fees 
 
The Bishops argue the master erred by allowing 
 Hook to recover attorneys fees and costs.  We disagree.
It is well settled in South Carolina 
 that attorneys fees are recoverable only when authorized by contract or statute.  
 Baron Data Systems, Inc., v. Loter, 297 S.C. 382, 383, 377 S.E.2d 296, 
 297 (1989).  Where there is a contract, the award of attorneys fees is left 
 to the discretion of the trial judge and will not be disturbed on appeal unless 
 an abuse of discretion is shown.  Baron Data Systems, 297 S.C. at 384, 
 377 S.E.2d at 297; see also Donahue v. Donahue, 299 S.C. 353, 
 365, 384 S.E.2d 741, 748, (1989) (An award of attorneys fees and costs is 
 a discretionary matter not to be overturned absent abuse by the trial court.)
The restrictive covenants allow Grantors 
 nominee to collect reasonable attorneys fees and all other expenses incurred 
 by the nominee in any legal action.  The master found Wilkins effectively assigned 
 Hook his rights to enforce the covenants against the Bishops.  As the assignment 
 transfers all rights, power, and authority to enforce this particular covenant, 
 the right to recover fees and costs was also transferred.  Thus, the master 
 did not abuse his discretion in awarding Hook attorneys fees and costs as incurred 
 in this action.
CONCLUSION
 For the foregoing reasons, the decision of the 
 master is
AFFIRMED.
HEARN, C.J., HOWARD, and KITTREDGE, JJ., concurring.

 
 
 [1] Grantor is Spence Plantation Phase III Limited Partnership, of 
 which RPW Development is the general managing partner.  

 
 
 [2] At present, the wall ranges in height from 6.7 feet to 11.7 feet, 
 and is 104 feet long.  It sits approximately eleven feet from Hooks property 
 line.  Although, the majority of the wall runs parallel to Hooks property 
 line, an additional segment of the wall extends perpendicularly from the side 
 of the Bishops house to within six inches of Hooks property line.  

 
 [3] The pool is located approximately ten feet from 
 Hooks property line. 

 
 
 [4] The master found the assignment was made by Wilkins, as both general 
 managing partner of the Grantor and as Grantors nominee.  Pursuant to this 
 covenant, the right to designate other individuals to serve as nominees to 
 enforce the restrictive covenants is reserved by the Grantor.  Therefore, 
 the assignment was valid as made by Wilkins in his capacity as the general 
 managing partner of the Grantor.  Furthermore, the master finds the right 
 to enforce the covenants is also assignable by Wilkins as Grantors nominee, 
 and that Wilkins, in his capacity as Grantors nominee, effectively made a 
 partial assignment of his right to enforce the covenants.