632 S.E.2d 888

**Patrick M. SIAU and Nancy S. Siau, as Co–Trustees of the Siau Qualified Personal Residence Trust Dated January 25, 2002, Raymond A. Pendleton and Jean C. Pendleton, Respondents,**

v.

**Kal KASSEL, Millard Dozier and Robert M. Rogerson, Defendants and Third Party Plaintiffs,**

**of whom Kal Kassel is Appellant,**

v.

**Hagley Estates Property Owners Association, The County of Georgetown and the State of South Carolina, Respondents.**

No. 4133.

Court of Appeals of South Carolina.

Heard May 11, 2006.

Decided July 3, 2006.

634

Robert J. Moran, of Murrells Inlet, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy General Salley W. Elliott and Assistant Deputy Attorney General J. Emory Smith, Jr., all of Columbia; Charles T. Smith, of Georgetown; Ed Kelaher and Sid Connor, both of Surfside Beach; Jack M. Scoville and Joe Michael Crosby, both of Georgetown; Linda Weeks Gangi, of Conway, for Respondents.

SHORT, J.:

Kal Kassel appeals from a decision restraining and enjoining him from building any permanent structure within thirty feet of his rear property line and ordering him to remove all permanent structures currently located within thirty feet of

his rear property line. Kassel contends the trial court erred in determining ownership of land through the "Public Trust Doctrine," balancing the equities, and failing to determine his rights against Georgetown County. We affirm.

## FACTS

In 1997, Kassel and Millard Dozier purchased a single lot bordering the Waccamaw River in a Georgetown County residential subdivision known as Hagley Estates. Kassel, a licensed real estate agent, and Dozier, a licensed builder, then legally split the single lot into two separate lots by filing a new plat with Georgetown County in 1997. Kassel and Dozier split the lot into two "flag lots" with the intention to build a house on each lot.[1]

Kassel and Dozier built a house on one of their two newly created lots (Lot 11) and sold this property to Ray Pendleton. Kassel later bought Dozier's interest in the remaining lot (Lot 12), and he became the sole owner of the property. After spending several years considering whether to sell Lot 12, Kassel informed Pendleton that he was going to build his own home on the lot "right up to the bulkhead."[2]

Pendleton, concerned that Kassel's house would partially obstruct his view of the river, declared that Kassel could not build there and asserted he would sue him if he tried. Kassel responded that he had already received approval.

Kassel's architect, Dwayne Vernon, presented his building plan to both the Georgetown County Zoning Office and the Hagley Estates Property Owner's Association (the Association), and this plan was approved by both. Vernon also contacted the Office of Coastal Resource Management (OCRM) and the Army Corps of Engineers, and both groups stated they had no issue with him building up to the bulkhead.

---

1. "Flag Lots" simply refers to the irregular flag shape of the lots. Flag lots are "real wide on one side and very narrow on the other." Kassel and Dozier had to configure the lots irregularly because in order for a home to be built on a lot in Georgetown County, the lot must contain 10,000 square feet or more and contain a sufficient "envelope" in which to build.

2. The "bulkhead" in this case is a retaining wall built along the waterfront; it sits very near the rear property line of Lot 12.

Georgetown County maintains a fifteen-foot rear setback requirement for Kassel's property, and the Association maintains a thirty-foot rear setback requirement. Kassel and his architect represented to the county zoning department that Kassel owned not only Lot 12, but also the adjacent cypress flats which lie between the bulkhead on Lot 12 and the Waccamaw River. The cypress flats are strips of tidal land that lie between the mean high water mark (MHWM) and the mean low water mark of the tidal Waccamaw River. Kassel intended to use the cypress flats to comply with the rear setback requirements.

When Kassel began building his home as planned, Pendleton contacted the county zoning department to inquire about Kassel's permit. Pendleton was told the permit was granted, but his concerns about Kassel building so close to the bulkhead would be investigated. Having received no further response from the county, Pendleton spoke with other neighboring landowners. These neighbors, the Siaus, would have their view of the river completely obstructed by Kassel's house. Therefore, the Siaus also contacted county zoning to prevent construction of the house.

After repeatedly attempting to contact OCRM, the Army Corps of Engineers, and several county officials over a period of several months, Pendleton and the Siaus were finally able to meet with the county to review Kassel's building plans. Pendleton and the Siaus contended Kassel did not own the cypress flats, and therefore, he was not in compliance with the rear setback requirements. The county agreed, and on August 25, 2003, approximately 120 days after construction began, the county posted a stop work order for the construction of Kassel's house.

Kassel appealed the stop work order to the Georgetown County Construction Board of Adjustments and Appeals (the Board). On September 16, 2003, a hearing was held before the Board. The Board, after hearing testimony and reviewing pertinent documentation, found in favor of Kassel and rescinded the stop work order.

On September 17, 2003, the Pendletons and the Siaus (collectively, Plaintiffs) filed a verified complaint against Kassel and Dozier alleging the construction on Lot 12 violated

rear setback requirements.[3] Accompanying this complaint was Plaintiffs' motion to temporarily restrain and preliminarily enjoin Kassel from continuing his construction during the pendency of the case. Kassel and Dozier answered Plaintiffs' complaint and filed third party complaints against Georgetown County, the Association, and the State of South Carolina.[4] In addition to their complaint, Plaintiffs appealed the Board's decision to rescind the stop work order, and the trial court incorporated this separate appeal into the instant action.

The trial court found in favor of Plaintiffs, restrained and enjoined Kassel from building any permanent structure within thirty feet of his rear property line, ordered him to remove all permanent structures located within thirty feet of his rear property line, and dismissed as moot Plaintiffs' appeal of the Board's decision. Kassel now appeals.

## STANDARD OF REVIEW

"An action to enforce restrictive covenants by injunction is in equity." *South Carolina Dep't of Natural Res. v. Town of McClellanville*, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001). On appeal of an equitable action tried by a master, the court may find facts in accordance with its own view of the evidence. *Id.* However, the appellate court is not required "to ignore the findings below when the trial court was in a better position to evaluate the credibility of the witnesses." *Seabrook Island Prop. Owners Ass'n v. Marshland Trust, Inc.*, 358 S.C. 655, 661, 596 S.E.2d 380, 383 (Ct.App.2004).

A decision whether to grant or deny an injunction is ordinarily left to the sound discretion of the trial court. *County of Richland v. Simpkins*, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct.App.2002). An abuse of discretion occurs when a trial court's decision is either unsupported by the evidence or controlled by an error of law. *Ledford v. Pennsylvania Life*

---

3. Dozier was named as a party based on his prior ownership of Lots 11 and 12 and the fact that he was acting as Kassel's builder in the construction of the house on Lot 12.

4. The Association informed the court that it did not wish to participate in the trial. The Association believed no specific relief was sought against it, and its position would be adequately represented by the other parties. They agreed to be bound by the court's decision.

*Ins. Co.*, 267 S.C. 671, 675, 230 S.E.2d 900, 902 (1976) (citations omitted).

## LAW/ANALYSIS

### I. Public Trust Doctrine

Kassel contends his use of tidal wetlands as his rear setback does not violate the public trust doctrine. Kassel argues neither his neighbors nor Georgetown County should be allowed to utilize the doctrine as a weapon to prevent his use of the cypress flats. We disagree.

■ Under the public trust doctrine, the State holds presumptive title to land below the high water mark. *McQueen v. South Carolina Coastal Council*, 354 S.C. 142, 149, 580 S.E.2d 116, 119 (2003). "[N]ot only does the State hold title to this land in *jus privatum*, it holds it in *jus publicum*, in trust for the benefit of all the citizens of this State." Id. "The State's presumptive title may be overcome only by showing a specific grant from the sovereign [either the King of England or the State] which is strictly construed against the grantee." *Id.* at 149 n. 6, 580 S.E.2d at 119 n. 6. The State's presumptive title applies to tidelands. *Id.* at 149–50, 580 S.E.2d at 120.

■ Kassel did not erect any structure or commit any encroachment upon land below the MHWM. Therefore, we agree with his assertion that building his home up to the bulkhead does not violate the public trust doctrine. However, his compliance with the doctrine is irrelevant to the disposition of this matter. The only relevancy of the doctrine in this dispute is with regard to determining ownership of the cypress flats.

Because Kassel admits he cannot overcome the State's presumption of ownership of the cypress flats, it is undisputed that he does not own this land. Kassel seeks to use land he does not own to satisfy both the county and the Association's rear setback requirements. It is as a result of these setback violations, not a violation of the public trust doctrine, that Kassel has been enjoined from building his house up to the bulkhead.

■ Because Kassel does not own the cypress flats, his lot essentially ends at the bulkhead. Thus, his house would have to be no less than thirty feet away from the bulkhead. Kassel's house clearly violates the setback requirements in that it is less than thirty feet from the bulkhead.[5] We find no error in the trial court's interpretation and use of the public trust doctrine.

## II.  Balancing of the Equities

■ Kassel contends the trial court erred in balancing the equities. He argues he should not be required to remove, redesign, and reconstruct his home when he had no knowledge or fault in creating the problem, and Plaintiffs' only damages are a diminished view of the river. We disagree.

■ As voluntary contracts, restrictive covenants will be enforced unless they are indefinite or contravene public policy. *Houck v. Rivers,* 316 S.C. 414, 416, 450 S.E.2d 106, 108 (Ct.App.1994). The Association's applicable restrictive covenant states: "No residence constructed on this lot, including porches or projections, shall be erected less than thirty (30) feet from the front lot line nor thirty (30) feet from the rear lot line." The Association's restrictive covenants further provide that "any person or persons owning real property in Hagley Estates Subdivision" may seek enforcement of the restrictive covenants. We do not find these restrictive covenants to be indefinite or in contravention of public policy.

■ Kassel asks us to balance the equities in the application of the restrictive covenants. "Although an injunction, like all equitable remedies, is granted as a matter of sound judicial discretion, and not as a matter of legal right, the right of a plaintiff to an injunction to enforce restrictive covenants has long received special treatment." *Id.* at 418, 450 S.E.2d at 109 (citation omitted). Generally, a restrictive covenant will be enforced regardless of the amount of damage that will result from the breach and even though there is no substantial

---

5.  Even if Kassel legally owned the cypress flats, his use of this land to satisfy the setback requirements for the construction on Lot 12 would be inappropriate because Lot 12 and the cypress flats constitute two separate lots. Kassel would have had to file a new plat with the county and been permitted to join the two lots.

monetary damage to the complainant by reason of the violation. *Id.* at 419, 450 S.E.2d at 109. "The mere breach alone is grounds for injunctive relief." *Id.*

Based on *Houck*, we do not need to reach the issue of "balancing the equities" in order to enforce restrictive covenants. However, we will undertake a brief analysis. In evaluating a request for injunction, the equities of both sides are to be considered, and each case must be decided on its own particular facts through a "balancing of the equities." *Mail-Source, LLC v. M.A. Bailey & Assocs.*, 356 S.C. 363, 368, 588 S.E.2d 635, 638 (Ct.App.2003).

Kassel's first indication that his ownership of the cypress flats was tenuous at best should have been when he was provided a quit-claim deed to this property in exchange for five dollars. A second indication of a potential ownership problem was the fact Kassel was never able to attain title insurance for the cypress flats. Kassel, a licensed real estate agent himself, should have realized that his ownership of the cypress flats was far from certain.

Kassel argues that he received permission from all of the necessary organizations to proceed with his desired building plan, but the building plans submitted to the county zoning office and the Association represented that Kassel owned the cypress flats. In fact, Kassel's architect admitted that he told the zoning officer that Kassel owned the cypress flats. It was based on this misrepresentation that the zoning officer gave her approval to the building plan. Additionally, prior to the commencement of any construction on Lot 12, Pendleton informed Kassel of his intent to sue if Kassel built up to the bulkhead.

While removal of the partially constructed home will result in a hardship to Kassel, we find that Kassel was not without fault or knowledge of a potential problem with his desired building plan. After balancing the equities, we find the granting of the permanent injunction was appropriate under the facts of this case.

## III. Laches

Kassel contends Plaintiffs should have been prevented from seeking an injunction under the equitable doctrine of

laches. He argues that Plaintiffs' delay in asserting their rights was unreasonable. We disagree.

"Laches is the *negligent* failure to act for an unreasonable period of time." *Gibbs v. Kimbrell,* 311 S.C. 261, 269, 428 S.E.2d 725, 730 (Ct.App.1993) (emphasis in original). Courts of equity will refuse to protect a party's rights if the party's delay in exercising those rights is unreasonable and has resulted in injury to his adversary. *Id.* A determination of laches rests within the sound discretion of the trial court and must be determined by the facts of each case. *Id.*

In this case, Pendleton informed Kassel of his intent to sue before any construction on Lot 12 began. During the months that followed Kassel beginning construction of his house, Plaintiffs repeatedly attempted to contact the county zoning office, the Association, OCRM, and the Army Corps of Engineers to determine their rights in this matter. When Plaintiffs were finally able to meet with county zoning officers, they addressed their issues with Kassel's construction plan, and the county issued a stop work order. Once the Board rescinded the stop work order on appeal, Plaintiffs diligently filed their complaint the next morning. Under the facts of this case, we find Plaintiffs' delay to be reasonable.

## IV. Adjudicating Kassel's Rights Against Georgetown County

Kassel contends the trial court erred in not addressing Plaintiffs' appeal from the Board's decision. We find this issue is not preserved for review.

One party may not 'bootstrap' or benefit from another party's objection or challenge. *See Tupper v. Dorchester County,* 326 S.C. 318, 324 n. 3, 487 S.E.2d 187, 190 n. 3 (1997). When the circuit court does not specifically address an issue, and when an issue presented to the circuit court in a civil case is not explicitly ruled upon in the final order, the issue must be raised by an appropriate post-trial motion to be preserved for appellate review. *Summersell v. South Carolina Dep't of Public Safety,* 337 S.C. 19, 22, 522 S.E.2d 144, 145–46 (1999).

Kassel was successful in his appeal to the Board seeking rescission of the stop work order; thus he did not appeal its decision to the trial court. The appeal of the Board's order rightfully came from the aggrieved parties, the Plaintiffs. In the interest of judicial economy, the trial court incorporated Plaintiffs' appeal from the Board's order into Plaintiffs' civil suit against Kassel. After finding in favor of Plaintiffs and ordering Kassel to remove all structures within thirty feet of the bulkhead and permanently enjoining him from building in that area, the trial court properly dismissed Plaintiffs' appeal of the Board's order as moot.

Kassel is attempting to "bootstrap" his appeal to this court based on Plaintiffs' appeal of the Board's decision to the trial court. This simply cannot be done. Kassel neither raised this issue at trial nor in his motion for reconsideration; thus, this issue is not preserved for appellate review.

## CONCLUSION

We find the trial court properly enjoined Kassel from building within thirty feet of his rear property line, ordered Kassel to remove all permanent structures located within thirty feet of his rear property line, and dismissed Plaintiffs' appeal of the Board's decision as moot. Based on the foregoing, the trial court's order is

**AFFIRMED.**

KITTREDGE and WILLIAMS, JJ., concur.