THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Ken Buffington, Louis Shepard, Mary E. Williams, Brian Meece and Shirley Jones, Respondents,
 v.
 T.O.E Enterprises, A South Carolina General Partnership and T.O.E. Residential, LLC, Appellants.
 
 
 

Appeal From Pickens County
 Jackson V. Gregory, Circuit Court Judge
Unpublished Opinion No. 2007-UP-252
Submitted April 2, 2007  Filed May 24, 2007
AFFIRMED

 
 
 
 Woodrow Grady Jordan, of Easley, for Appellants.
 Thomas Bailey Smith, of Easley, for Respondents.
 
 
 

PER CURIAM:  T.O.E. Enterprises and T.O.E. Residential, LLC (collectively T.O.E.) appeal the trial courts order permanently enjoining T.O.E. from using two lots for commercial purposes in violation of restrictive covenants.  T.O.E argues the trial court erred by not balancing the equities of the parties and in not finding conditions had changed sufficiently so as to nullify the restrictive covenants.  We affirm.[1]
FACTS
Ken Buffington, Louis Sheppard, Mary Williams, Brian Meece, and Shirley Jones (collectively Residents) owned lots in the Forest Acres Subdivision in Easley when this action was commenced.  The Forest Acres Subdivision is shown on a plat recorded on October 3, 1960. Restrictive covenants for the subdivision were also recorded on October 3, 1960. The restrictive covenants state [n]o lot shall be used except for residential purposes. However, multiple lots are specifically excluded from the operation of the covenants. In addition, all lots marked Reserved on the plat are unaffected by the covenants.  The parties agreed the covenants apply to only 62 of the 110 lots in the subdivision. 
 
TOE owns a Toyota dealership that borders Forest Acres Subdivision.  Between 2003 and 2004, it purchased a portion of lot 9, as well as lots 10, 11, and 12 in the subdivision.  Moreover, TOE leases the remainder of lot 9.  A portion of lot 9 is marked reserved on the plat, lots 10 and 12 are included in the covenants, and lot 11 is specifically excluded from the covenants.   TOE acquired these lots to expand the parking lot for its dealership and has already paved all of lot 9.   
 
Residents brought a declaratory judgment action seeking a declaration of their rights, as well as an order permanently enjoining T.O.E. from using lots 9, 10, or 12 for non-residential purposes. The trial court found that the restrictive covenants did not apply to lot 9 because the lot was marked "reserved" on the plat. Additionally, the trial court concluded T.O.E failed to offer sufficient evidence of changed conditions to warrant invalidating the covenants. Ultimately, the trial court permanently enjoined T.O.E from using lots 10 and 12 for non-residential purposes.  This appeal followed.
STANDARD OF REVIEW
A declaratory judgment action is neither legal nor equitable in nature, but it takes on the tenor of the underlying action.  Seabrook Island Prop. Owners Assn v. Marshland Trust, Inc., 358 S.C. 655, 661, 596 S.E.2d 380, 382-83 (Ct. App. 2004) (citation omitted).  An action to enforce restrictive covenants by injunction is in equity. S.C. Dept of Natural Res. v. McClellanville, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001) (citing Taylor v. Lindsey, 332 S.C. 1, 3 n.2, 498 S.E.2d 862, 864 n.2 (1998)).  
 
When reviewing an action tried by a judge alone in equity, the appellate court has jurisdiction to find facts in accordance with its views of the preponderance of the evidence.  Townes Assocs., Ltd. v. Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976) (citation omitted).  Despite this broad scope of review, an appellate court should not ignore the findings of the trial court because the trial judge was in a better position to evaluate witness credibility.  Seabrook Island, 358 S.C. at 661, 596 S.E.2d at 383.  Although, a party may bring a declaratory judgment action to invalidate a restrictive covenant based on a change of conditions, the party bringing the action bears the burden of proof by a preponderance of the evidence.  Menne v. Keowee Key Prop. Owners Assoc, Inc., 368 S.C. 557, 564, 629 S.E. 2d 690, 694 (Ct. App. 2006).
LAW/ANALYSIS 
I.  Balancing the Equities of the Parties
T.O.E. argues the trial court erred by failing to balance the equities in favor of T.O.E.  We disagree.
An injunction, as all equitable remedies, is granted as a matter of sound judicial discretion; however, the right of the plaintiff to an injunction in the enforcement of a restrictive covenant traditionally receives special treatment.  See Houck v. Rivers, 316 S.C. 414, 418, 450 S.E.2d 106, 109 (Ct. App. 1994).  
 
The rules applicable to the construction of contracts are applicable to the construction of covenants in deeds.  Id. at 416, 450 S.E.2d at 108 (citation omitted).  As voluntary contracts, restrictive covenants will be enforced unless they are indefinite or contravene public policy.  Id. (citation omitted).  Covenants that restrict the free use of property must be strictly construed against limitations upon the propertys free use.  Hyer v. McRee, 306 S.C. 210, 212, 410 S.E.2d 604, 605 (Ct. App. 1991) (citation omitted). Further, where doubt exists, the doubt must be resolved in favor of the free use of the property.  Id.  
 
Although, T.O.E. and Residents agree that the covenants apply to lots 10 and 12, T.O.E. argues the trial court erred in not balancing the equities of the parties, and thereby, invalidating the covenants application to those lots.  We acknowledge that Siau v. Kassel, 369 S.C. 631, 641, 632 S.E.2d 888, 893 (Ct. App. 2006), states that based on Houck, a trial court is not required to balance the equities of the parties before enforcing restrictive covenants.  However, even were we to balance the equities in this case, equity clearly favors Residents. 
 
In arguing that the equities favor terminating the restrictive covenants, T.O.E. claims it will have to relocate its dealership due to pressure from Toyota if  it  is not allowed to use the land in question for parking. T.O.E. presented testimony that it has already spent over $700,000 on the property.  Further, T.O.E. points to the presence of commercial buildings within the subdivision: a motel, a bowling alley, a furniture store, and a Chinese restaurant.
 
However, these commercial buildings are on lots in the subdivision and an area excluded from the restrictive covenants. Moreover, Residents assert that prior to the lawsuit that they did not realize the commercial buildings were part of the subdivision. 
 
The evidence supports the trial courts conclusion that while T.O.E. has presented evidence of a potential financial loss, the Residents loss of the character of their subdivision outweighs T.O.E.s financial concerns.  See Houck, 316 S.C. at 419, 450 S.E.2d at 109 (stating that a restrictive covenant will be enforced irrespective of the financial damage potentially caused by enforcement of the covenant). See­ Also Circle Square Company v. Atlantis Development Company, 267 S.C. 618, 630, 230 S.E. 2d 704, 709 (1976) (Equity will enforce restrictive covenants made for the benefit of an owners land if they remain of substantial value, even though, because of changed conditions, hardship will be visited on the servient estate). Accordingly, the trial court did not err in enforcing the covenants inasmuch as the equities clearly favor the enforcement of the restrictive covenants.
II.  Changed Conditions
T.O.E. argues the trial court erred by not finding that changed conditions do not exist to the extent to require nullification of the restrictive covenants.  We disagree.
To defeat enforcement of covenants restricting the use of land, changed conditions must be so radical as to practically destroy the essential objects and purposes of the covenants.  Shipyard Property Owners Assn v. Mangiaracina, 307 S.C. 299, 308, 414 S.E.2d 795, 801 (Ct. App. 1992) (citation omitted); see also Inabinet v. Booe, 262 S.C. 81, 84, 202 S.E.2d 643, 645 (1974).  This change in conditions is also described as such  a change in the character of the neighborhood as to render the enforcement of the covenant valueless to the covenantee and oppressive and unreasonable as to the covenantor.  Dunlap v. Beaty, 239 S.C. 196, 209, 122 S.E.2d 9, 15-16 (1961).
Again, T.O.E. presented evidence of the existence of a motel, a bowling alley, a furniture store, and a Chinese restaurant within the subdivision. However, these commercial buildings existed in areas specifically excluded from the restrictive covenants and apparently within the scheme of the subdivisions planned development. This conclusion is buttressed by the fact that Residents did not even realize these areas were part of their subdivision. Therefore, the plan of the subdivision and restrictive covenants have, in fact, worked as designed for over 40 years.  The commercial areas were allowed to exist, but only on specified lots, and the rest of the lots enjoyed a typical subdivision appearance.  Thus, T.O.E has not carried its burden of showing that conditions in the subdivision have changed to the extent that the covenants no longer served the purpose for which they were recorded.
CONCLUSION
For the reasons stated herein, the trial courts decision is 
 
AFFIRMED. 

BEATTY and WILLIAMS, JJ., and CURETON, A.J., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.