15115

COOKSEY v. BEAUMONT MFG. CO.

(9 S. E. (2d), 790)

396

*Messrs. Perrin & Tinsley,* for appellant,

*Messrs. DePass & DePass,* for respondent,

July 3, 1940.

The opinion of the Court was delivered by Mr. Justice Carter.

Plaintiff in his suit begun March 23, 1939, prays judgment against defendant for $65.08 actual and $1,000.00 punitive damages. He contends that for a long number of years prior to May 14, 1937, he had been employed by defendant company at 34¢ an hour "for all work done, among which work was acting as watchman on Sunday for a per-

iod of six hours"; that "on May 14, 1937, Act No. 326 of the Acts of the General Assembly of 1937 became of force and effect, 40 St. at Large, p. 528, and by virtue of same plaintiff became entitled to receive time and a half pay for all work done on Sunday, but immediately upon the passage of said Act defendant herein, its agents and servants, fraudulently conceived a scheme to evade the provisions of the aforesaid Act and to cheat and deprive all night watchmen working on Sunday, and particularly this plaintiff, of the benefits provided therein, by skillfully juggling the figures and wage scale of this plaintiff, without his knowledge and consent, in such a way as to prevent the paying to this plaintiff the time and half for the six hours work performed on Sunday, and they thereafter put this scheme into force and effect and paid the plaintiff only $14.40 a week instead of the previous $14.30, namely, giving plaintiff a raise of 10 cents per week instead of a raise of $1.02 per week, as provided by law"; that on July 17, 1938, a general wage cut was made which was accepted by plaintiff along with all employees of the company; that for fifty-nine weeks between May 14, 1937, and July 17, 1938, defendant deprived plaintiff of and refused to pay him, "although demand was made," a total of $54.28. A further claim was made for $10.80 for twelve weeks subsequent to July 17, 1938, making the total of actual damages prayed for of $65.08.

Defendant admits that plaintiff was in its employ and that his base rate of pay, as of May 14, 1937, was 34¢ per hour. It denies, however, that it deprived him, through any fraudulently conceived scheme, of any amount due. By way of affirmative defense, defendant alleges that Act No. 326 was enacted without its knowledge and that it received no information with reference to it nor any instructions from the Department of Labor of the State of South Carolina for some time thereafter; that, because of competitive conditions existing in the textile industry, it was required, after the passage of the act, to either "hire new watchmen who would

not work as many as twenty hours during the week, or to adjust the wages of its watchmen to a figure which would enable said defendant to continue on a competitive basis with the other textile plants of the county"; that the wage scale for watchmen at defendant's plant was changed from 34¢ per hour to 32¢, which changed wage scale was posted on the time board in the machine shop, the usual and customary place for posting, on May 31, 1937, after which date plaintiff had been paid time and a half for all hours worked by him on Sunday, based on the new rate of wages, 32¢ an hour, which new rate plaintiff had accepted as of May 31, 1937. Defendant also alleged that through inadvertence it failed to pay plaintiff time and a half for the three Sundays prior to May 31, 1937, based on the old rate of 34¢ and that it thereafter tendered to him $3.06, the amount agreed upon to be due him for the eighteen hours which he had worked on those three Sundays.

The case came on for trial before Judge Merchant and a jury on October 30, 1939. Motions for a nonsuit and for a directed verdict were refused. The presiding Judge charged the jury, however, that it could not find for plaintiff actual damages of more than $54.28, the amount alleged to be due between May 14, 1937, and July 17, 1938, and on which latter date, July 17, 1938, the general wage cut went into effect, "at which time it is admitted by both parties that the scale was posted on the bulletin board." The jury found for plaintiff $54.28 actual and $250.00 punitive damages. Defendants thereupon asked for a new trial and from Judge Merchant's order overruling such motion this appeal is taken.

By the first eight exceptions appellant charges the trial Judge with error in refusing its motions for a nonsuit and for a directed verdict. The following question is raised: "Did the respondent herein allege and prove any contract, the terms of which were violated by the appellant, and if so, is there a particle of testimony anywhere in the record to

show that such alleged breach was accompanied by any fraudulent act?"

Appellant contends that there was no allegation in the complaint nor any testimony "setting forth or establishing the terms and conditions of a contract between respondent and appellant for any definite period of time." The complaint, however, alleged that plaintiff was employed by defendant; it shows, and the same is set out in defendant's answer, that plaintiff had worked for defendant for over a year. It is also seen, from a reading of the pleadings, that plaintiff's employment was from week to week. Such employment from week to week constituted a verbal or oral contract for hire. See *Hardwick v. Page,* 124 S. C., 111, 117 S. E., 204, also 39 C. J., 39.

By its plain terms, Act No. 326 provided that any person working on Sunday should receive time and a half for all hours worked. In order to have meaning and effect, this provision would have to form a part of plaintiff's verbal contract for hire; in other words, the Legislature intended that plaintiff should receive time and a half for all work done on Sunday, based on the rate of pay agreed upon in his oral contract for hire.

We will next inquire as to whether there was a violation of this contract of employment by appellant because of the alleged adjustment in the rate of pay. Appellant contends that there is nothing in the act which prohibits or forbids an adjustment in the wage scale. And this is true. But such adjustment could not arbitrarily be made without giving plaintiff some notice that it had been done; that is, plaintiff had a right to rely upon the rate provided for in his oral contract for hire until he had notice that such rate had been changed. In 39 C. J., 175, we find the following: "The rule that wages cannot be reduced within the term without the employee's consent applies equally to employees by the day, week, month, or year. But inasmuch as the employment is for recurring terms, the same

scale of wages is held to continue from one term to the next, until the employee has had actual notice of a reduction either directly from his employer, or indirectly through his fellow employees."

Did the plaintiff have such notice that his wage rate had been adjusted. He testified that he received no notice, nor did he learn in any way, that his hourly rate had been changed to 32¢; that he saw no time sheet containing the wage rate posted on the bulletin board prior to the general wage cut in 1938, but that if such wage rate had been so posted, he would have seen it; that sometime after he commenced receiving $14.40 per week, he talked with the other watchmen about the extra 10¢ in his pay envelope, but that he did not know what it was for, as he still thought he was working for the same hourly rate that is, 34¢; that he knew he was not getting time and a half for the work done on Sunday but that he made no complaint or demand or inquiry about it to any one. Watchmen Cogsdell and Rhinehart corroborated plaintiff's testimony. Mr. Green, another watchman, testified that he saw no time sheet showing the wage rate. He stated, however that when he asked Mr. Neal, the paymaster, whether he would be paid time and a half for the work done on Sunday he found that his hourly rate had been changed from 34¢ to 30¢, and that he discussed this with Mr. Cooksey and the other watchmen. Mr. Weathers testified that no one told him what his rating was but that he figured the change in rating was what Mr. Green referred to as a change.

We think the trial Judge was correct in refusing to direct a verdict for defendant as to actual damages as there was sufficient evidence to send the case to the jury on the question as to whether defendant had breached the contract of hire and had breached and evaded its obligation and duty under the act which formed a part of the contract for hire.

We are of opinion, however, that a verdict should have been directed for defendant as to punitive damages. The undisputed testimony was to the effect that there were six watchmen at defendant's plant; that prior to May 14, 1937, all six watchmen received 34¢ per hour for each hour worked, or $14.30 per week; that until June 4, 1937, each of them continued to receive the same rate of pay, 34¢ per hour, week days as well as Sunday, with no increase in rate for the hours worked on Sunday, each of them receiving $14.30 per week. Testimony for the plaintiff was to the effect that after June 4, 1937, each of the watchmen received $14.40 except one who continued to receive $14.30; that the watchman who received $14.30 did no work on Sunday but that, of the five others who received $14.40, one worked twelve hours on Sunday and the others worked six hours, the hourly rate being so adjusted that each of those who worked on Sunday, even though some worked more hours than others, received the same amount of pay, an increase of only 10¢ over the amount received prior to May 14, 1937, being allowed in each instance.

It is well settled that, in order to recover punitive damages for breach of contract, there must be a fraudulent act accompanying such breach. *Holland v. Spartanburg Herald-Journal Co.,* 166 S. C., 454, 165 S. E., 203, 84 A. L. R., 1336. We do not think there was evidence of such a wanton disregard of defendant's obligations and duties as would warrant this Court in finding that there was a fraudulent act accompanying the breach of contract.

Our holding with reference to punitive damages renders unnecessary a discussion of Exceptions 9 through 17.

For the reasons stated by us in disposing of the question as to actual damages, Exceptions 13 and 14 are without merit.

The appellant requested the presiding Judge to charge the jury as follows: "I charge you as a matter of law that if you find by the greater weight of evidence

that plaintiff knew of the change in wages and acquiesced therein by accepting reduced wages for a long period of time he is now estopped from claiming any damages therefrom," and his refusal to do so is the basis for Exceptions eighteen and nineteen. In the light of the testimony, from which a reasonable inference could be drawn that the respondent knew that his wages had been changed from 34¢ to 32¢ per hour, if he continued in the employment with this knowledge without making any question thereabout he cannot thereafter claim wages at the rate of 34¢ per hour, especially when employed from week to week or month to month. He would thereby have impliedly consented to such change in the contract of employment, and would be thereby estopped. The request undoubtedly embodied a correct principle of law and one which was pertinent to and applicable to the issues in this case, in view of the testimony in the case.

The appellant also requested the trial Judge to charge "as a matter of law" that the adjustment of wages by the defendant herein, subsequent to the enactment of Act No. 326 of the Acts of the General Assembly of 1937, was not a violation of said Act. This request, *as worded*, would have been a charge on the facts and for this reason was properly refused.

In view of the disposition we have herein made of this case, it is unnecessary to discuss Exceptions 21, 22, 23 and 24.

For the reasons above stated, the judgment appealed from is reversed as to punitive damages; and having sustained appellant's Exception eighteen, the judgment for actual damages is also reversed, and the case remanded to the Court from whence it came for a new trial as to said actual damages.

Mr. Chief Justice Bonham and Messrs. Justices Baker, Fishburne and Stukes concur.