16585

KITCHENS v. LEE

(69 S. E. (2d) 67)

*Messrs. S. Augustus Black* and *Frank M. Harvin,* of Columbia, *and Moise, Post & Gardner,* of Atlanta, Georgia, *of Counsel, for Appellant,* cite:

*Messrs. C. T. Graydon* and *John Grimball,* of Columbia, *for Respondent,* cite:

*Messrs. S. Augustus Black* and *Frank M. Harvin,* of Columbia, and *Moise, Post & Gardner,* of Atlanta, Georgia, *of Counsel, in Reply,* cite:

February 1, 1952.

STUKES, Justice.

Appellant was engaged in the construction of the Veterans' Administration building at the corner of Laurel and Assembly Streets in Columbia. Advised that the night watchman was quitting, respondent applied to the superintendent and was employed in that capacity. Both of them testified at the trial under review that the compensation stipulated was $50.00 per week. The following is from the cross-examination of respondent:

"Q. $50.00 a week was to be the pay for your job, wasn't it? A. Yes, sir.

"Q. And that's what you got, less the 'deducts', isn't it? A. Yes, sir."

The agreement was made in the afternoon and respondent went to work almost immediately—at 6:00 or 6:30 P. M. He

was required to be on duty from 6:30 to 6:30, or twelve hours, seven days a week, which means that he worked eighty-four hours each week. This went on for about ten months, with short lapses when respondent was sick and provided a substitute. He was paid by weekly chceks to which were attached stubs or vouchers which he retained and offered in evidence—forty-four in all. Each specified the total wages to be $50.00 with deductions of seventy-five cents for old age benefits and $2.20 withholding tax, which reduced the net amount of each check to $47.05. The stub or voucher also contained the following which it is plain, gave rise to this action:

| No. | Hours | Rate | Total Wages |
|-----|-------|------|-------------|
| O | 10 | 1.36 | |
| R | 40 | .91 | 50.00 |

Sometime after respondent voluntarily left the employment he brought suit for alleged overtime pay, aggregating $1,849.60, upon grounds which included the terms of appellant's construction contract with the United States and the applicability of a Federal statute, both requiring the payment of overtime wages for hours of service above forty hours per week. Upon motion of appellant that respondent elect his cause of action from the several alleged in the complaint, it was agreed at the commencement of the trial that respondent should proceed upon express contract and it was upon that theory that the case was tried. The terms of the construction contract and the Federal wages and hours law were conceded to be inapplicable to a night watchman and no question thereabout inheres in the appeal.

The trial judge refused timely motions by appellant for non-suit and directed verdict and the jury found for respondent. Afterward the court likewise refused appellant's motions for judgment *non obstante veredicto,* and for new trial. This appeal followed. Respondent's counsel, with commendable frankness, stated in oral argument of the appeal that fraud is not involved in the case and the only question

is, What was the agreed compensation for his client's services?

There is no evidence in the record to sustain the finding of a contract to pay respondent for "overtime", which was implicit in the verdict and judgment. Respondent's own testimony negatives it. He admitted on cross-examination that the only amount of wages referred to in the contract of employment was $50.00 per week and that he knew when he first went on duty that he would work twelve hours per night; and, at the end of first week, he knew that he was required to work seven nights per week. He said that he made no complaint of the hours or with respect to the requirement that he work seven nights a week; and he drew his $50 per week likewise without protest. The following is from his testimony:

"Q. So, you knew your job would be twelve hours? A. Yes, sir; I knew it when I came on that night.

\* \* \*

"The Witness: After I drew the first $50.00, I knew I had to work twelve hours a night, seven days a week."

The foregoing testimony of respondent was corroborated by appellant's construction superintendent and by the office manager. They explained that the vouchers attached to the weekly pay checks, copied in part above, were for insurance purposes, and artificial so far as the contract of employment was concerned. Their answers to inquiries as to the rate of pay of respondent's predecessor and successor in employment were excluded upon the objections of respondent's counsel. The payroll was forwarded to the Atlanta office of appellant and the pay checks and vouchers prepared there, where the records were kept. The duties of both of these witnesses were executive in nature and they were paid weekly salaries similarly to the watchman and unlike laborers and mechanics who were on hourly bases of pay. Their pay checks were likewise artificially broken down into fictitious hourly rates for, presumably, the same insurance purposes. They and the

watchman were described in the evidence as "straight time men."

The office managed testified in part as follows:

"Q. He (respondent) worked fifty hours a week? A. We had to have a base rate of pay, and we had to break the $50.00 down. In other words, Mr. Kitchens (respondent) didn't work all the time, and when Mr. Kitchens would lay off a day, we broke the week down into seven days at $7.28 a day, and the man he employed to work for him when he was sick got $7.28 a day. We had to have some base to work on, and we started from $50.00.

* * *

"Q. Well, how much per hour was that? A. It wasn't based on an hourly rate. It was based on $50.00 a week, and divided by seven days that was as close as we could get it.

"Q. Then when a man would work in his place, he would be paid at the same rate? A. That's right.

"Q. But your records—your original records from which these slips are made up show that Mr. Kitchens only worked fifty hours a week? A. We had to have a base.

"Q. And you changed it to make the base? A. No, sir; I didn't make it. That was done in Atlanta. I was instructed that all straight time men were to be broken down into fifty hours. I work more than fifty hours, but my time is shown at fifty hours."

And further:

"Q. Mr. Johnson, did Mr. Kitchens ever claim, in conversation with you, that he was entitled to any pay for overtime? A. No, sir.

"Q. Did he ever claim that he was entitled to pay at any different rate than $50.00 a week? A. No, sir."

The judgment cannot stand and there are obvious reasons. First, there was no evidence of a meeting of the minds of the contracting parties to pay and receive more than the total of $50.00 per week for respondent's services as night watchman, regardless of the hours of labor

required. A meeting of the minds, actual or implied, is, of course, essential for the formation of a legally enforceable contract, and authority need not be cited for this primary concept. Evidence of it is wholly lacking here with respect to overtime pay. On the contrary, the only reasonable inference from the evidence is that the minds of the contracting parties met, and they agreed, that the employer should pay, and the employee accept, $50.00 per week for the service as night watchman, irrespective of the number of hours required. The conclusion is inescapable and that was the contract, in the absence of pertinent statute, as here.

A second cogent reason for reversal of the judgment ██ is that respondent is contending for an enforcement of the contract in terms which are in conflict with the contemporary interpretations which were placed upon it by both contracting parties. In cases of doubt, that is determinative. 12 Am. Jur. 787 *et seq.* Contracts, sec. 249. *Stackhouse v. Pure Oil Co.,* 176 S. C. 318, 180 S. E. 188. Respondent received and willingly accepted $50.00 for each week of the ten months' employment which was impliedly, at least, tendered as full payment for his services under the contract. The repeated payments by appellant and long-continued and unqualified acceptances by respondent are conclusive of their respective interpretations of the terms of the contract, by which both are bound even if there were uncertainty as to the terms of the contract.

A recent case of striking similarity of facts to this, and of the same result, is *Chambers,* who was likewise an 84-hour per week night watchman, *v. W. L. Florence Const. Co.,* 73 Ga. App. 172, 36 S. E. (2d) 69, 72, in which the court referred to the inaccurate vouchers (very like those in this case) which accompanied the weekly pay checks of the plaintiff as a "mere matter of bookkeeping" and insufficient to carry the case to the jury. See also the subject cases and the appended annotations in 25 A. L. R. 212, 218, and 107 A. L. R. 702, 705, which relate in part to the recovery of "overtime" pay.

The doctrine of conclusion by mutual contemporary construction referred to above, is close akin, at least, to estoppel, which it was called in our late case of *Cooksey*, who was also a watchman, *v. Beaumont Mfg. Co..* 194 S. C. 395, 9 S. E. (2d) 790, 793. It was there said in the opinion with respect to the receipt of weekly pay checks without complaint during the whole period of employment, as follows: "The appellant requested the presiding Judge to charge the jury as follows: 'I charge you as a matter of law that if you find by the greater weight of evidence that plaintiff knew of the change in wages and acquiesced therein by accepting reduced wages for a long period of time he is now estopped from claiming any damages therefrom', and his refusal to do so is the basis for exceptions eighteen and nineteen. In the light of the testimony, from which a reasonable inference could be drawn that the respondent knew that his wages had been changed from 34¢ to 32¢ per hour, if he continued in the employment with this knowledge without making any question thereabout he cannot thereafter claim wages at the rate of 34¢ per hour, especially when employed from week to week or month to month. He would thereby have impliedly consented to such change in the contract of employment, and would be thereby estopped. The request undoubtedly embodied a correct principle of law and one which was pertinent to and applicable to the issues in this case, in view of the testimony in the case."

The court should have nonsuited respondent at the close of his case or, failing that, should have directed verdict against him. The judgment is reversed for entry thereof for appellant pursuant to Rule 27 of this court.

Judgment reversed.

FISHBURNE, TAYLOR, and OXNER, JJ., and G. BADGER BAKER, A. A. J., concur.