17564

John W. DOUGLASS, Jr., Plaintiff-Respondent, v. James N. THREADGILL, Defendant-Appellant

(110 S. E. (2d) 169)

*Messrs. J. G. Leatherwood, C. Victor Pyle,* and *W. E. Bowen,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

August 6, 1959.

TAYLOR, Justice.

Defendant-Appellant executed to Plaintiff-Respondent a written contract of purchase and sale of certain real estate within the City of Greenville agreeing for the consideration therein stated to convey to plaintiff said premises by good, warranty deed, free of encumbrances, liens, or assessments. Plaintiff engaged, as attorney, a reputable member of the Greenville Bar to examine and pass upon the title to said property and to close out the transaction. Upon examination, it was disclosed that a joint easement of an 18 foot driveway existed thereon and the deed from defendant to plaintiff so states. Defendant had acquired the property in question from Dr. L. H. McCalla by way of deed in which the 18 foot joint driveway in question was reserved; and this deed, recorded in the R. M. C. Office for Greenville County in Deed Book 524 at page 279, was on record at the time of the execution of the contract and examination of title by plaintiff's attorney.

After examination of the title and the deed had been prepared by the attorney, plaintiff and defendant met in the attorney's office for the execution and delivery of the deed and consummation of sale. After some discussion as to the 18 foot driveway easement, plaintiff accepted the deed and left it with his attorney to be recorded, which was done.

Thereafter, action for actual damages for alleged breach of the sales contract against the defendant was instituted in the Court of Common Pleas for Greenville County. De-

fendant duly answered, denying the material allegations of the complaint and alleged that plaintiff accepted said deed with actual, constructive, and imputed knowledge of the existence of the 18-foot easement on said property.

The cause came on for hearing before Honorable E. H. Henderson, Presiding Judge of said Court, and a jury. After refusal of a motion for a directed verdict by the defendant, argument of counsel, and the Judge's charge, certain requests to charge were presented and refused. The jury rendered a verdict in favor of plaintiff in the sum of $6,300.00 actual damages. Motion for judgment *n. o. v.*, and/or for a new trial was made and taken under advisement by the Court. Judge Henderson thereafter filed his Order overruling the motions but granted a new trial *nisi*, unless the plaintiff should remit on the record the sum of $1,800.00 of his verdict, which was duly done.

Defendant in this appeal charges error in 26 exceptions, but it is necessary to consider only those exceptions which present the question of whether the Trial Judge erred in refusing defendant's request to charge the applicable law with respect to estoppel, it being contended that plaintiff is estopped from maintaining this action by reason of having accepted the deed to the property in question with knowledge, actual, constructive, and imputed, of the existence of the 18-foot easement and that defendant could not convey title to said property free of such easement.

A portion of paragraph 5 of the defendant's answer sets forth that plaintiff's agent and servant, his attorney, examined the title to said property for plaintiff prior to the consummation of said sale; that, in fact, plaintiff's said agent and servant prepared the deed from defendant to plaintiff and inserted in said deed the provision relating to said 18-foot driveway easement; that by reason of said facts, plaintiff is estopped and cannot now deny that he had notice, both actual and constructive, of said 18-foot driveway easement, the same having been spread on the public records of Greenville County in the Office of the Register of Mesne

Conveyances and having been discovered by plaintiff's said agent and servant acting within the scope of his employment and about his master's business.

Plaintiff testified, in part, as follows:

"Q. I will ask you whether or not immediately to the North of the building you observed anything during the negotiations for the property? A. Well, I observed that a retaining wall which to my mind was the demarcation line between the property that I was contemplating buying and the one adjoining it, and I noticed the lot, the 45-foot lot, was covered with fresh granite and I also noticed that people had been driving across this crushed granite to the extent that it was beginning to form ruts on the property.

\* \* \*

"Q. You say you made inquiry regarding that particular portion of the property. What, if anything, did Mrs. Baldwin (the real estate agent) tell you? A. I asked if permission had been granted anybody or any arrangements made whereby they could drive across the property, I had seen this sign, and Mrs. Baldwin told me 'No.'

"Q. Mrs. Baldwin told you no. She told you no permission was granted? A. Yes, sir.

"Q. Did she tell you anything else? A. She told me that people driving across this property could be stopped at the convenience of the owner.

"Q. All right, sir. I will ask you whether or not shortly thereafter a deed was—the transaction was closed."

Defendant testified, in part, as follows:

"Q. Now, did you go to Mr. Arnold's office to close this transaction? A. I did.

"Q. Was your wife with you? A. Yes, sir.

"Q. Was anything said in Mr. Arnold's office about this easement or driveway prior to the consummation of the sale? A. Yes, sir, it was discussed.

"Q. By whom? A. By Doctor Douglass and Mr. Arnold and myself.

"Q. What was said? A. The exact words, I do not know, but in essence he asked about the driveway and Mr. Arnold, having the deed in front of him, read him a portion of the deed telling about the easement. Now, I at that time was still under the impression that it could be closed.

"Q. You thought at that time that it could be closed. A. Yes, sir, with the consent of Dr. McCalla, however, by owning the rear lot.

"Q. Did you make any such statement in Mr. Arnold's office, prior to the consummation of the sale, that you thought it could be closed? A. In other words, at the time it was closed, the only conversation carried on was between Mr. Arnold and myself, and Doctor Douglass brought the conversation up and asked about it before he accepted the deed.

"Q. Do you recall whether or not that was prior to the time you actually signed the deed? A. It was before I signed the deed, sir."

Mr. W. H. Arnold testified, in part, as follows:

"Q. Mr. Arnold, I will ask you whether or not both Doctor Douglass and Doctor Threadgill were clients of yours on September 7th, 1956. A. Yes, sir. Whenever this transaction was closed, September 7th, that's right.

"Q. All right, sir. I will ask you whether at that time you were attorney for the City of Greenville? A. Yes, sir.

"Q. And still are. At that time, was Mr. Threadgill or Doctor Threadgill a member of City Council? A. Yes, sir.

"Q. All right, sir. Mr. Arnold, it has been testified here today that at the closing of the transaction Dr. Douglass asked you regarding an easement on the property purchased. I will ask you whether or not the word easement was ever used by you or anyone there in your hearing at the time of the closing? A. No, sir, it was not.

"Q. All right, sir. It has been testified here today that you then read to Doctor Douglass a portion of the deed which Mr. Threadgill signed and which has been introduced into evidence as Plaintiff's Exhibit 3. I will ask you whether or not you read aloud any portion of that deed to Dr. Doug-

lass at the time of the closing? A. No. I know I didn't because I never have in a transaction unless it's somebody who's ignorant or something like that, someone who wouldn't understand the situation.

* * *

"Q. You were employed by Doctor Douglass to examine this title? A. That's correct.

"Q. And he paid you for it? A. Yes, sir.

"Q. You were acting as his agent in so doing? A. Yes, sir, that is correct, certainly.

"Q. And you prepared this deed from Threadgill to Douglass? A. That is correct.

"Q. And you put in there this 18-foot reservation? A. That's right. I called it a driveway, that's what I had in my notes. Front driveway. I didn't refer to the word easement in connection with it.

Q. Well, you prepared the deed and put in this wording: 'And this conveyance is made subject to the 18-foot joint driveway referred to in said deed.' A. That's right.

"Q. And you were referring to the deed from Doctor McCalla to Doctor Threadgill? A. That's right.

* * *

"Q. And you stated there in their presence that the title was all right except for the mortgage, the taxes and the driveway and what else? A. And a lease.

"Q. So you did call that to Doctor Douglass' attention? A. I did in that I only mentioned the word driveway, Mr. Pyle, I didn't tell him that it could be closed and I didn't tell him that it couldn't be closed.

"Q. Yes, sir. And he didn't ask you did he? A. No, sir, he didn't ask. That was all that was said about it.

"Q. You knew it couldn't be closed? A. Yes, sir.

"Q. And you were his agent? A. Yes, sir."

The purchaser and the vendor had employed the same attorney, the one to pass upon the title and the other to prepare the deed. Upon completion of these duties, both the purchaser and the seller met in the attorney's office to com-

plete the transaction. The evidence is conflicting as to just what transpired; but from the foregoing, it will be seen that there is some evidence as to actual knowledge in that plaintiff was aware that the driveway had gravel upon it and was being used by others, also, some evidence as to imputed knowledge through his attorney; and, further, there is evidence as to constructive knowledge as the deed whereby defendant acquired the property was duly recorded before the sale in question and that deed provided for the 18-foot joint driveway.

Defendant did not specifically plead waiver, but such may be proven without doing so, *DeVore v. Piedmont Insurance Co.*, 144 S. C. 417, 142 S. E. 593, and estoppel which is akin to waiver was specifically pleaded.

In the light of the pleadings and the testimony, a reasonable inference might be drawn that the purchaser with full knowledge of the existence of the driveway and defendant's inability to convey title to the property free of such easement decided to consummate the deal nevertheless. If so, he is estopped from maintaining this action. This question, however, is one of fact which should have been presented to the jury with proper instructions. *Cooksey v. Beaumont Mfg. Co.*, 194 S. C. 395, 9 S. E. (2d) 790.

Appellant has strenuously argued that the deed made in execution of the contract of sale merged the provisions of the contract therein. The trial Judge declined to pass upon this question because he did not think it was raised by the pleadings. Since there must be a new trial, Appellant will have an opportunity to remove any doubt as to the sufficiency of his answer to raise the question by appropriate amendment.

For the foregoing reasons, we are of opinion that the judgment appealed from should be set aside and a new trial ordered; and It Is So Ordered. Reversed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.