672 S.E.2d 816

**TIME WARNER CABLE, Respondent,**

v.

**CONDO SERVICES, INC., d/b/a Renaissance Enterprises, Inc., Appellant.**

**No. 4481.**

Court of Appeals of South Carolina.

Heard Dec. 3, 2008.

Decided Jan. 12, 2009.

James B. Richardson, Jr., of Columbia, for Appellant.

Frank R. Ellerbe, III, of Columbia, for Respondent.

CURETON, A.J.:

A jury awarded Time Warner Cable (Time Warner) damages for a breach of contract after Condo Services, Inc., d/b/a Renaissance Enterprises, Inc. (REI), failed to pay Time Warner monies owed under the parties' contract. The circuit court subsequently ordered REI to allow Time Warner to continue providing services to REI's customers for the remaining term of the contract and required Time Warner to credit twenty percent of its revenues for video services during this time toward the balance owed by REI on the jury's damages award. We affirm in part, reverse in part, and remand.

## FACTS

In a contract effective July 2, 2003, Time Warner agreed to provide video and other services through REI's existing cable system to 784 condominium units in the Myrtle Beach area. The contract provided for an initial term of seven years and an unlimited number of five-year extension terms. The contract required Time Warner to upgrade and maintain REI's cable system at REI's expense and gave Time Warner the exclusive right to provide "bulk multi-channel video services" and addi-

tional services [1] through that system. REI agreed to market Time Warner's basic cable services to its customers and to bill its customers for basic cable service. Upon commencement of services, REI was obligated to pay Time Warner $11.50 per month for each condo unit, regardless of whether the unit was occupied. This amount did not include charges for equipment rental or any taxes and fees, all of which REI agreed to pay as well. Time Warner reserved the right to raise the $11.50–per–unit fee by no more than six percent annually upon written notice.[2] Time Warner was to bill REI for its services in advance, and payment was due within thirty days of the date of each invoice.

The contract defined instances of default and provided remedies. Events constituting default included: (1) either party's failure to perform any material obligation and subsequent failure to cure the problem within thirty days following notice thereof; (2) REI's failure to pay any of Time Warner's invoices timely more than two times during any twelve-month period; and (3) either party's insolvency or participation in a bankruptcy proceeding as a debtor. Under section 7.2 of the contract, each party reserved the right to terminate the contract upon thirty days' notice if breached by the other party, as well as the right:

> [T]o seek all remedies available at law or in equity with respect to a breach or default under this Agreement by the other (including injunctive relief and specific performance, in cases where such breach or default is causing or would cause irreparable damage or where no adequate remedy at law is available), and such rights and remedies shall be cumulative.

---

1. " 'Additional Services' means any services other than the Bulk Multi–Channel Video Services that can be provided to the [residential condominium complexes] over the System (including … video services billed individually to any Residents after the Initial Term and any Extension Terms)." Presumably, services such as digital telephone and high-speed internet would also qualify as "Additional Services." Customers who purchased additional services received a separate bill from Time Warner for those services. REI did not market, bill for, or receive any income from the additional services.

2. At the time of trial, this amount had increased to $12.69 per unit per month.

Furthermore, if REI defaulted by failing to pay invoices, section 7.2 permitted Time Warner to "elect to provide its package of multi-channel video services on an individually-billed basis directly to Residents during the remaining Term."

In 2004, Time Warner filed suit against REI for failure to pay invoices, alleging breach of contract and seeking an injunction permitting it to serve REI's customers directly. On January 11, 2006, Time Warner notified REI it was terminating the contract effective March 15, 2006. Following a hearing on March 14, 2006, the circuit court entered an order enjoining Time Warner from terminating cable service. In that order, the circuit court specifically found "allowing Time Warner to terminate the contract and discontinue cable service during the pendency of this action would result in irreparable harm to REI and to the owners at the condominium complexes." Time Warner continued providing cable service pursuant to the circuit court's preliminary injunction entered March 14, 2006.

In April 2006, a jury found in favor of Time Warner and awarded it $140,542.21 in money damages on the breach of contract claim. Following the verdict, Time Warner sought injunctive relief enforcing section 7.2 of the contract and permitting it to use REI's cable system to continue delivering cable services to customers in the condominiums. On October 6, 2006, the circuit court granted this relief, subject to certain limitations. The circuit court reasoned that permitting Time Warner to continue providing these services would minimize any interruption to the customers' cable service. The circuit court imposed limitations on Time Warner's continued use of REI's cable system, including: (1) Time Warner must credit twenty percent of the revenues it received from video services to reduce the amount of judgment against REI and make semi-annual reports to the circuit court and REI concerning these reductions; (2) Time Warner must initially fund any additional upgrades to the system, with REI annually becoming responsible for a greater percentage of upgrade costs; and (3) Time Warner must post and maintain for the duration of the order a bond equal to twice the amount of the judgment to ensure its compliance with the order. The order was to expire upon REI's satisfaction of the judgment or on July 2, 2010, the end of the contract's initial seven-year term.

On December 12, 2006, the circuit court denied REI's motion for reconsideration. This appeal followed.

## STANDARD OF REVIEW

"When legal and equitable causes of action are maintained in one suit, the court is presented with a divided scope of review." *Blackmon v. Weaver*, 366 S.C. 245, 248, 621 S.E.2d 42, 43–44 (Ct.App.2005). An action seeking damages for breach of contract is an action at law. *Electro Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter, Inc.*, 357 S.C. 363, 367, 593 S.E.2d 170, 172 (Ct.App.2004). "An action to construe a contract is an action at law reviewable under an 'any evidence' standard." *Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001). However, the power of the court to grant an injunction lies in equity. *Strategic Res. Co. v. BCS Life Ins. Co.*, 367 S.C. 540, 544, 627 S.E.2d 687, 689 (2006). "A decision whether to grant or deny an injunction is ordinarily left to the sound discretion of the trial court." *Siau v. Kassel*, 369 S.C. 631, 638, 632 S.E.2d 888, 892 (Ct.App.2006). A decision to grant specific performance likewise rests in the sound discretion of the trial court. *Campbell v. Carr*, 361 S.C. 258, 263, 603 S.E.2d 625, 627 (Ct.App.2004).

## LAW/ANALYSIS

### I. Time Warner's Use of REI's Cable System

REI asserts the circuit court abused its discretion in ordering the takeover of REI's cable system as a means of paying off Time Warner's money judgment. We agree.

"The discretion to grant or refuse specific performance is a judicial discretion to be exercised in accordance with special rules of equity and with regard to the facts and circumstances of each case." *Guignard v. Atkins*, 282 S.C. 61, 66, 317 S.E.2d 137, 140 (Ct.App.1984). A court may order specific performance if: (1) a valid contract exists between the parties; (2) no adequate remedy at law exists for the breach; (3) specific performance is equitable between the parties; and (4) no fraud, accident, or mistake infects the contract. *King v. Oxford*, 282 S.C. 307, 314, 318 S.E.2d 125, 129 (Ct.App.1984).

However, specific performance is not an absolute right, and a court granting it must follow established principles and carefully consider all the circumstances of the particular case. *Bishop v. Tolbert*, 249 S.C. 289, 298, 153 S.E.2d 912, 917 (1967). Generally, a court will not order specific performance that would require "continuous direction and supervision of the court," but an exception to this rule exists for cases in which the public has an interest. 81A C.J.S. *Specific Performance* § 65 (2004).

Initially, we note this appeal arrives in an unusual procedural posture. Time Warner included both legal and equitable causes of action in its complaint. When REI demanded a jury trial, the breach of contract cause of action became a matter for the jury to decide, but the cause of action for injunctive relief remained within the province of the judge. *See* Rules 38 & 39, SCRCP. Ordinarily, the circuit court would have followed the jury trial of the legal action with a bench trial of the equitable action. *See Airfare, Inc. v. Greenville Airport Comm'n*, 249 S.C. 265, 269, 153 S.E.2d 846, 848 (1967) (holding when legal and equitable issues exist in the same case and jury trial is appropriate, "[t]he legal and equitable issues should be separated and each tried by the appropriate branch of the court"). However, in this matter, no bench trial followed the jury trial. Rather, Time Warner presented its request for injunctive relief in the form of a motion to enforce the remedies section of the contract. The parties filed memoranda supporting or opposing this motion, and on June 6, 2006, the circuit court heard arguments. REI did not oppose Time Warner's presentation of its request for relief in the context of a motion hearing rather than a trial. However, it may have prevented the parties from fully developing evidence that would have assisted the circuit court in fashioning an order that gave effect to the parties' intent as expressed in their contract and subsequent actions.

## A. Specific Performance Generally

■ The circuit court did not err in granting specific performance [3] because it is an appropriate remedy under the

---

3. While the circuit court makes no reference to this remedy as "specific performance," the parties have characterized it as that. Specific per-

circumstances present in this case. *See King,* 282 S.C. at 314, 318 S.E.2d at 129. REI argues on appeal that no valid contract existed because Time Warner terminated the contract by notice given in January of 2006. However, REI effectively blocked this attempt at termination by procuring a temporary injunction requiring "the parties [to] continue to operate under the July 2, 2003, contract" during the pendency of the lawsuit. The circuit court specifically found "that allowing Time Warner to terminate the contract ... would result in irreparable harm to REI and to the owners at the condominium complexes." By the time the jury found REI defaulted, giving Time Warner cause to terminate the contract, Time Warner had reconsidered its decision to terminate. It made no further effort to terminate the contract. Instead, it continued providing services and pursued enforcement of the contract. Therefore, a valid contract existed at the time the circuit court granted the injunctive relief.

REI further argues the circuit court's order is inequitable because it redirects income that would have been REI's to Time Warner and leaves REI with nothing. However, REI's argument focuses on inequities born of the limitations imposed by the order rather than on any inequity that would result from specific performance under the terms of the contract. Aside from these arguments, REI does not challenge the other criteria for specific performance, and we find specific performance to be an appropriate remedy.

## B. Use of Specific Performance to Enforce Money Judgment

The circuit court erred in ordering REI's compensation from its court-ordered performance under section 7.2 of the contract to be applied wholly to the satisfaction of Time Warner's money judgment because Time Warner had an

---

formance "requires precise fulfillment of a legal or contractual obligation." Black's Law Dictionary 1407 (7th ed.1999). In this matter, Time Warner asked the circuit court to enforce an ambitious contractual provision that supplied few specific terms. The circuit court fashioned an order that ultimately exceeded the intent of the provision. In this section, we concern ourselves only with the propriety of specific performance as a remedy. We address the limiting terms added by the circuit court below.

adequate remedy at law for its losses under the portions of the contract it had already performed. A party is not entitled to specific performance of a contractual provision if an adequate remedy exists at law. *Id.* Time Warner sought and received an award of damages for the financial losses it suffered due to REI's inadequate payments prior to trial. These damages were retrospective, making Time Warner whole in light of the losses it suffered in the past. In addition, Time Warner sought injunctive relief to ensure it would not continue to lose revenue by allowing REI to act as a "middle man" in collecting revenues from customers. This relief was prospective. The two types of relief are distinct from one another: the damages authorized by law assuage Time Warner's past losses, and the injunction or specific performance demanded by equity protects Time Warner's anticipated future income under the contract. Because Time Warner has adequate remedies at law for enforcing and collecting its money judgment, the circuit court's use of the injunction or specific performance to satisfy this judgment was improper. Consequently, requiring REI's compensation for its specific performance to be diverted to Time Warner in payment of the judgment was error, and we reverse the circuit court's decision diverting REI's compensation to Time Warner.[4]

## II. Fair Compensation

REI asserts the circuit court abused its discretion in finding twenty percent of Time Warner's video revenues derived from the takeover of REI's cable system would be fair compensation to REI. We agree.

"Common sense and good faith are the leading touchstones of construction of the provisions of a contract; where one construction makes the provisions unusual or extraordinary and another construction which is equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction must prevail." . . .

---

4. This requirement was also error because it created an inequitable situation between the parties, in contravention of the test enunciated in *King.* Diverting one hundred percent of REI's income to satisfy Time Warner's money judgment created a draconian judgment-enforcement mechanism that left REI bereft even of a subsistence income from its cable system.

... Our cases have long held that ambiguities must be construed against the party who prepared the contract.... [W]e hold "a party to a written contract, where there is no ambiguity or indefiniteness in the essentials, cannot say their minds did not meet." ... "There exists in every contract an implied covenant of good faith and fair dealing."

*Parker v. Byrd,* 309 S.C. 189, 193–94, 420 S.E.2d 850, 853 (1992) (internal citations omitted). Furthermore:

[N]either law nor equity requires every term or condition to be set forth in a contract. Where an implied term is necessary to effectuate the intention of the parties, the law will supply it. The unexpressed provision may be inferred from the language of the contract itself, or by looking to the external facts and circumstances surrounding the bargain, or by proving a general custom and usage of including certain terms as part of similar contracts.

*Maccaro v. Andrick Dev. Corp.,* 280 S.C. 96, 100, 311 S.E.2d 91, 94 (Ct.App.1984) (internal citations omitted).

 The circuit court erred in ordering a compensation rate entirely unrelated to the contract between Time Warner and REI. At REI's request, the circuit court prohibited Time Warner from terminating the contract during the litigation. With the contract intact, Time Warner sought specific performance of section 7.2. In granting Time Warner's motion for enforcement of section 7.2 and outlining the obligations of the parties, the circuit court undertook to construe the terms of section 7.2. However, the circuit court effectively rewrote a material provision of the contract, the rate of REI's compensation, using as its model limited evidence of an unrelated and unfinalized agreement between Time Warner and another cable system owner.[5] The twenty-percent rate has no basis in the terms of the agreement between these parties and, standing alone, provides insufficient guidance to determine a fair rate based on other agreements in the cable industry. Consequently, imposing this rate was error.

---

5. Time Warner identified "one commercial arrangement" in which it utilized the other party's cable system in exchange for a twenty-percent share of video revenues. Time Warner stated the terms of that arrangement were under renegotiation at the time of suit. Without further inquiry, the circuit court found this agreement sufficiently comparable to use as a model for its decision in this matter.

The circuit court received evidence of each party's income from revenues collected, as well as evidence of each party's obligations under the contract. Determination of a fair monthly compensation rate should reflect the intent of the parties as memorialized by the terms of the contract. *See Id.* A fair monthly compensation rate should derive from the income to which the contract entitled each party prior to enforcement of section 7.2, reduced or increased by the actual costs shifted from one party to another by the order of enforcement. The parties must identify for the circuit court the particular burdens and benefits reallocated between them by the order for specific performance and must submit evidence of the actual monthly costs incurred by this shift.[6] Therefore, we reverse and remand to the circuit court for the taking of evidence concerning the costs shifted between the parties by requiring specific performance under the terms of section 7.2 and for entry of an order establishing a fair rate of compensation for REI consistent with the terms of the contract.

## CONCLUSION

As to Time Warner's use of REI's cable system, we find while specific performance is an appropriate remedy for prospective relief under the facts of this case, diverting REI's compensation for this performance to Time Warner to satisfy its judgment was error. Accordingly, we reverse the circuit court's order diverting REI's compensation to Time Warner.

As to the amount of fair compensation for Time Warner's use of REI's cable system, we find twenty percent of Time Warner's income from video services is an arbitrary amount unrelated to the compensation rate set by the parties in the original contract. Consequently, we reverse the circuit court's order setting REI's compensation at twenty percent of Time Warner's income from video services and remand for further proceedings consistent with this opinion.

Accordingly, the order of the circuit court is

---

6. For instance, both the provision of installation services and converter boxes directly to customers and the cost of billing or maintaining the cable system during the remaining term of the contract have shifted from REI to Time Warner.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

SHORT and KONDUROS, JJ., concur.