THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.

 
 
 
 THE STATE OF SOUTH CAROLINA
 In The Court of Appeals
 Port City Limited
 Partnership and Ziff Properties, Inc., Appellants/Respondents,
 
 
 

v.

 
 
 
 City of
 Charleston, Respondent/Appellant.
 
 
 

Appeal From Charleston County
Kristi L. Harrington, Circuit Court Judge

Unpublished Opinion No. 2011-UP-427   
 Heard March 9, 2011  Filed September 23,
2011

AFFIRMED IN PART, REVERSED IN PART, AND
 REMANDED

 
 
 
 G. Trenholm Walker and Jamie A. Khan, both
 of Charleston, for Appellants/Respondents.
 Lydia B. Applegate, of Charleston, for
 Respondent/Appellant.
 
 
 

PER CURIAM:  Port City Limited Partnership and Ziff Properties,
 Inc. (collectively Appellants) appeal the circuit court's judgment in favor of
 the City of Charleston (the City) as to Appellants' claim for past-due
 "common expenses" under two leases between the parties.  The City
 cross-appeals the circuit court's denial of its request for attorney's fees. 
 We affirm in part, reverse in part, and remand.
FACTS
The City entered a ten-year
 lease for space in the Port City Center to house the South Carolina Automatic
 Ticketing Office (SCAT) beginning in 1994.  The lease was extended for an
 additional twenty-six months.  The City also leased space in the Port City
 Center for a ten-year term beginning in 1996 to house its Archives division. 
 The property was managed by Ziff Properties.  The terms of both leases were
 substantially similar.  The SCAT lease provided:

 3.4   Operating
 Cost Adjustment and Additional Rents:
 (A) Tenant's
 Pro Rata Share:  The Tenant's share of common expenses which are to be paid
 as Additional Rents shall be equal to three and one-half (3.5%)[1] percent ("Tenant's Pro Rata Share").
 (B) Solid
 Waste User Fee:  The Tenant shall pay the Tenant's Pro Rata Share of any
 solid waste user fees assessed against the Building and its common property on
 a monthly basis as invoiced by the Landlord.  The monthly fee for the first
 year is fo[]rty dollars ($40.00) per month,[2] and will be adjusted and reconciled each year with the tenant[']s actual pro
 rata expenses based on tenant occupancy.  

The City paid its monthly
 base rent plus pro rata share of the solid waste user fee.  The City also paid
 monthly fees for employee parking, visitor parking, and a mailbox.  
In March 2005, Port City
 decided to sell the building to Jupiter Realty.  As new owners, Jupiter
 performed an audit of the current leases and informed Ziff it was entitled to
 additional payments from the City under the terms of the two leases.  In
 response, Ziff sent letters to the City stating the City was required to pay
 its back due pro rata share of "common expenses."  The City refused
 payment, and Appellants brought this lawsuit in May 2005, seeking the past due
 amounts.  
At trial, Timothy Walter,
 Ziff's chief executive officer, testified he did not negotiate the leases at
 issue, and that the term "common expenses" was not defined therein. 
 However, he testified the City owed, under the leases, its pro rata share of
 taxes, insurance, electricity, water and sewer, gas and fuel, landscaping,
 interior plant maintenance, general repairs and maintenance, pest control,
 waste disposal, elevator maintenance, security, and other building services[3] in addition to the solid waste user fee and parking fees.  Walter admitted those
 charges were not assessed to the City until 2005 but testified that was simply an
 accounting oversight.  Upon cross-examination, the City introduced a copy of a
 fax sent in 1997 from Ziff to Daniel Maloney, the City's representative in the
 lease negotiations.  The document was a "lease report" containing the
 notation "TI/CAM  none."  Walter testified this would have indicated
 to the recipient that no taxes, insurance, or common area maintenance fees were
 due.  At the close of Appellants' case, the circuit court granted partial
 summary judgment in the City's favor, ruling that claims for monies due prior
 to May 2002, were barred by the statute of limitations.    
The trial continued as to the
 remaining claims, and Colleen Carducci, director of real estate management for
 the City, testified she was not directly involved with the negotiation of the
 leases at issue.  However, she indicated it was her expectation based on the
 lease, billing history, and conversations with Ziff that "the rent
 included all of the services that were being provided at the building."  The
 City's expert, Thomas Hartnett, testified it was common in the realty business
 for landlords to charge operational costs to tenants that could include
 management fees, taxes, and insurance.  Hartnett further testified it was the
 custom in commercial realty to explicitly define any expenses outside the base
 rent that a tenant was obligated to pay.  He indicated the term "common
 expenses" was not defined in the two leases between the City and Appellants
 and it was not a term typically found in commercial leases.    
The circuit court held the
 lease was ambiguous for indefiniteness of expression because the term "common
 expenses" was undefined.  The circuit court concluded the parties' course
 of conduct in the years between the signing of the leases and the filing of the
 lawsuit "was conclusive" of their intent pursuant to Kitchens v. Lee, 221
 S.C. 59, 69 S.E.2d 67 (1952)[4]. 
 Because the City paid its rent plus the additional solid-waste user fee, and
 that was accepted by Appellants, those actions established what "common
 expenses" meant under the leases, and the City did not owe any additional
 funds to Appellants.  The circuit court denied the City's request for
 attorney's fees under the contract.  
Appellants filed a motion for
 reconsideration regarding the past-due amounts.  Likewise, the City filed a
 motion for reconsideration with respect to the denial of attorney's fees.  Both
 motions were denied, and this appeal and cross-appeal followed.  
LAW/ANALYSIS
I.  Statute
 of Limitations
Appellants contend the
 circuit court erred in finding the statute of limitations barred their claims
 prior to May 2002, because the breach of contract did not occur until Ziff
 requested payment for the past-due common expenses and the City refused to pay
 in 2005.  We disagree.
  "Statutes
 of limitations embody important public policy considerations in that they
 stimulate activity, punish negligence, and promote repose by giving security and
 stability to human affairs."  Moates v. Babb, 322 S.C. 172, 176,
 470 S.E.2d 402, 404 (Ct. App. 1996).  The statute of limitations for actions
 pursuant to contract or statute is three years.  S.C. Code Ann. § 15-3-530(1)-(2)
 (2005) (stating the statute of limitations for actions based upon contract or
 upon liability created by statute is three
 years).  "The limitations period begins to run when a party knows or
 should know, through the exercise of due diligence, that a cause of action
 might exist."  Anonymous Taxpayer v. S.C. Dep't of Revenue, 377
 S.C. 425, 439, 661 S.E.2d 73, 80 (2008);  see also Epstein
 v. Brown, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005) ("Under the
 discovery rule, the statute of limitations begins to run from the date the
 injured party either knows or should know, by the exercise of reasonable
 diligence, that a cause of action exists for the wrongful conduct.").
Appellants
 contend the "common expenses" did not have a due date under the
 leases so they were arguably not due to be paid until Ziff demanded payment
 from the City in 2005.  Under Appellants' theory, a landlord could assess past-due
 common expenses at any point in the future without fear the statute of
 limitations would bar a claim.  Such an interpretation would severely undermine
 the purpose of statutes of limitation.  Walter testified common expenses under
 the lease should have been billed annually.   Appellants could have discovered
 through their own records and the exercise of due diligence the City was not
 being billed for additional fees such as taxes and insurance.  Therefore, the
 circuit court did not err in granting summary judgment in the City's favor with
 respect to claims for "common expenses" prior to May 2002. 
II.  Common
 Expenses Under the Lease
Appellants argue the circuit
 court erred in finding the term "common expenses" was ambiguous. 
 They further contend that if the leases were ambiguous, the circuit court erred
 in not requiring the City to pay anything as past-due common expenses.  
The circuit court
 determined that the phrase "common expenses" is ambiguous. 
 While we do not agree that the term itself is ambiguous, we do agree that the
 provision in the lease for the sharing of common expenses as "Additional
 Rents" is not capable of legal construction by the court.  Therefore, the
 circuit court was correct to consider the prior performance of the parties
 under the contract in order to determine their intent.  See Jordan
 v. Sec. Grp., Inc., 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993) ("Where the language of a contract is plain and capable of
 legal construction, that language alone determines the instrument's force
 and effect. . . . Resort to construction by a party is only done when
 the contract is ambiguous or there is doubt as to its intended meaning.")
 (emphasis added).  
We disagree, however, with
 the circuit court's conclusion that prior performance was conclusive as to the
 parties' intent.  Rather, the parties' prior conduct is merely one of the
 factors the fact finder considers in determining their intent entering the
 contract.  See Langston v. Niles, 265 S.C. 445, 458, 219 S.E.2d 829, 834 (1975) ("The
 conduct of the parties is entitled to great weight in interpreting an ambiguous
 contract.").  The court should also consider the testimony and evidence
 adduced by the parties to the contract as well as the common usage of terms in
 the industry.  See 32A C.J.S. Evidence § 1507 (2008) ("Evidence of the practical construction given to an
 instrument of writing by the parties thereto may be admissible to explain its
 meaning, when explanation is necessary."); Time Warner Cable v. Condo
 Servs., Inc., 381 S.C. 275, 285, 672 S.E.2d 816, 820-21 (Ct. App. 2009)
 (stating an unexpressed term may be inferred from the language of the contract
 or by examining the facts and circumstances surrounding the bargain, or by
 proving a general custom and usage of including certain terms as part of
 similar contracts).
Because the circuit
 court relied exclusively on the prior performance of the parties and did not
 consider other indicia of intent, such as the common usage of the terms in the
 industry, testimony of witnesses, and documentary evidence, the circuit court
 committed an error of law.  Therefore, we reverse the decision of the
 circuit court and remand for a new trial.  On remand, the circuit court
 should consider all evidence submitted by the parties relating to their intent
 in entering the lease agreement.  
III.   Attorney's
 Fees
The City claims the circuit
 court erred in denying its request for attorney's fees pursuant to the leases,
 which indicated the prevailing party shall be paid attorney's fees.  We reverse
 and remand.
"The general
 rule is that attorney's fees are not recoverable unless authorized by contract
 or statute."  Blumberg v. Nealco, Inc.,  310 S.C. 492, 493, 427
 S.E.2d 659, 660 (1993).  "When there is a contract, the award of
 attorney's fees is left to the discretion of the trial judge and will not be
 disturbed unless an abuse of discretion is shown."  Id.  When
 attorney's fees are requested and authorized by contract or statute, the court
 should make specific findings of fact regarding certain factors including (1) the
 nature, extent, and difficulty of the legal services rendered; (2) the time and
 labor devoted to the case; (3) the professional standing of counsel; (4) the contingency
 of compensation; (5) the fee customarily charged in the locality for similar
 services; and (6) the beneficial results obtained.  Id., 310 at 494, 427
 S.E.2d at 660-61.
In this case,
 both leases provided:

 10.6   Attorney's Fees:  In case suit shall be brought for
 an unlawful detainer of the Leased Premises, for the recovery of any rent due
 under the provision of the Lease, or because of the breach of any other
 covenant herein contained on the part of Tenant to be kept and performed, Tenant
 shall pay to Landlord all reasonable attorney's fees, in the event Landlord
 prevails in said litigation.  In the event Tenant shall bring suit for breach
 of Landlord's covenant herein contained or shall prevail in a suit brought by
 Landlord as herein provided, Landlord shall pay Tenant all reasonable
 attorney's fees. 

(emphasis added).
The circuit court
 "decline[d] to award attorney's fees" in a Form 4 order and failed to
 address the issue of attorney's fees at all in the formal order that followed. 
 Likewise, the circuit court summarily denied the City's motion to alter or
 amend the judgment regarding the denial of attorney's fees to it under the
 leases as the prevailing party.  
The leases
 clearly call for the payment of reasonable attorney's fees to the prevailing
 party.  While the court is given discretion to determine the amount of
 reasonable attorney's fees, it is not given discretion to summarily deny the
 request without reason or explanation.  To do so was an abuse of discretion,
 and the circuit court's ruling on the point is reversed.  Therefore, we remand the
 attorney's fee issue for (1) a determination of who is the prevailing party in
 light of our remanding the common expenses issue for consideration and (2) findings
 of fact with regard to a reasonable amount of attorney's fees.
Accordingly, the order of the
 circuit court is
AFFIRMED IN PART, REVERSED
 IN PART, AND REMANDED.
FEW, C.J., and THOMAS and
 KONDUROS, JJ., concur.

[1] The pro rata share of the Archives lease was 3.2%.
[2] The monthly fee under the Archives lease was $50.00
 per month.
[3] Both leases contained the following provision:

 Section
 7.1  Building Services:  Landlord
 agrees to furnish to the Leased Premises during hours of generally recognized
 business days, water, electricity for standard office use; heat and air
 conditioning required in the Landlord's reasonable judgment for the comfortable
 use and occupancy of the Leased Premises; building common area standard
 cleaning and janitorial services; normal maintenance and repair of the
 Property.  Landlord shall also maintain and keep lighted the common stairs,
 entries, and toilet rooms in the Building.

[4] Kitchens involved an oral agreement between a
 night watchman and his employer regarding overtime wages.